# EXHIBIT E

*4579820*    0

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
CHARLES SCHWARTZ, Esq.                     Bar # 49769
Charles Schwartz, P.C.
2129 Broadway
Oakland, CA 94612
  TELEPHONE NO.: 510-986-1300    FAX NO. *(Optional):*
E-MAIL ADDRESS *(Optional):*
ATTORNEY FOR *(Name):* Plaintiff

**FILED**
ALAMEDA COUNTY
FEB 1 0 2006
ARTHUR SIMS, Exec. Off./Clerk
By Yasmin Singh

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
  STREET ADDRESS: 1225 Fallon St.
  MAILING ADDRESS:
  CITY AND ZIP CODE: Oakland, CA 94607
  BRANCH NAME: Unlimited Civil Jurisdiction - Oakland

PLAINTIFF/PETITIONER: LISA JOHNSON

DEFENDANT/RESPONDENT: ALAMEDA COUNTY MEDICAL CENTER et al

CASE NUMBER:
RG05232747

**PROOF OF SERVICE OF SUMMONS**

Ref. No. or File No.:

*(Separate proof of service is required for each party served.)*

1.  At the time of service I was at least 18 years of age and not a party to this action.
2.  I served copies of:
    a. ☐  summons
    b. ☑  complaint
    c. ☑  Alternative Dispute Resolution (ADR) package
    d. ☐  Civil Case Cover Sheet *(served in complex cases only)*
    e. ☐  cross-complaint
    f. ☑  other *(specify documents):* First Amended Summons

3.  a. Party served *(specify name of party as shown on documents served):*
    CEDRICK FROWNER

    b. Person served: ☑ party in item 3a ☐ other *(specify name and relationship to the party named in item 3a):*
    CEDRICK FROWNER

4.  Address where the party was served: 5325 Broder Blvd.
    Dublin, CA 94568

5.  I served the party *(check proper box)*
    a. ☑  **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to
          receive service of process for the party (1) on *(date):* Feb. 09, 2006   (2) at *(time):* 0900 Am
    b. ☐  **by substituted service.** On *(date):*         at *(time):*         I left the documents listed in item 2 with or
          in the presence of *(name and title or relationship to person indicated in item 3b):*

        (1) ☐  **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business
                of the person to be served. I informed him or her of the general nature of the papers.

        (2) ☐  **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual
                place of abode of the party. I informed him or her of the general nature of the papers.

        (3) ☐  **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing
                address of the person to be served, other than a United States Postal Service post office box. I informed
                him or her of the general nature of the papers.

        (4) ☐  I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served
                at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on
                *(date):*         from *(city):*         or ☐ a declaration of mailing is attached.

        (5) ☐  I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
POS-010 (Rev. July 1, 2004)

**PROOF OF SERVICE OF SUMMONS**

Code of Civil Procedure, § 417.10

American LegalNet, Inc.
www.USCourtForms.com

**EXHIBIT E**

| PLAINTIFF/PETITIONER: LISA JOHNSON | CASE NUMBER: |
| DEFENDANT/RESPONDENT: ALAMEDA COUNTY MEDICAL CENTER et al | RG05232747 |

c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date):*        (2) from *(city):*

    (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgment of Receipt.*)* (Code Civ. Proc., § 415.30.)

    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

d. ☐ **by other means** *(specify means of service and authorizing code section):*

    ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:
  a. ☑ as an individual defendant.
  b. ☐ as the person sued under the fictitious name of *(specify):*
  c. ☐ as occupant.
  d. ☐ On behalf of *(specify):*
    under the following Code of Civil Procedure section:

    ☐ 416.10 (corporation)    ☐ 415.95 (business organization, form unknown)
    ☐ 416.20 (defunct corporation)    ☐ 416.60 (minor)
    ☐ 416.30 (joint stock company/association)    ☐ 416.70 (ward or conservatee)
    ☐ 416.40 (association or partnership)    ☐ 416.90 (authorized person)
    ☐ 416.50 (public entity)    ☐ 415.46 (occupant)
        ☐ other:

7. Person who served papers Deputy D. Laventure #114?
  a. Name:
  b. Address: 5325 Broder Blvd., Dublin, CA 94568
  c. Telephone number: (925)551 6767
  d. The fee for service was: $
  e. I am:
    (1) ☐ not a registered California process server.
    (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
    (3) ☐ registered California process server:
      (i) ☐ owner ☐ employee ☐ independent contractor.
      (ii) Registration No.:
      (iii) County:

8. ☐ I **declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    or

9. ☑ I am a California sheriff or marshal and I certify that the foregoing is true and correct.

Date: February 09 , 2006

Deputy D. Laventure #11??

_____
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

_____
(SIGNATURE)

# EXHIBIT F

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address):*
Charles Schwartz, Esq.                    (SB 49769)
CHARLES SCHWARTZ, P.C.
2128 Broadway
Oakland, CA 94612
TELEPHONE NO.: (510) 986-1300    FAX NO.*(optional):* (510) 986-1301
E-MAIL ADDRESS *(optional):* SchwartzPC@aol.com
ATTORNEY FOR *(Name):*

SUPERIOR COURT OF CALIFORNIA, COUNTY OF    ALAMEDA
STREET ADDRESS: 1225 Fallon Street
MAILING ADDRESS: Oakland, CA 94612
CITY AND ZIP CODE:
BRANCH NAME: (Unlimited Jurisdiction)

CASE NAME:
LISA JOHNSON v. ALAMEDA COUNTY MEDICAL CENTER, et al.

**FILED**
ALAMEDA COUNTY

NOV 0 8 2006

CLERK OF THE SUPERIOR COURT
By _a. Joanne Legell_
                          Deputy

| | |
|---|---|
| **ORDER GRANTING ATTORNEY'S** AMENDED **MOTION TO BE RELIEVED AS COUNSEL-CIVIL** | CASE NUMBER: RG05232747 <br> HEARING DATE: November 8, 2006 <br> DEPT.: 31    TIME: 9:00 a.m. <br> BEFORE HON.: Winifred Smith <br> DATE ACTION FILED: September 15, 2006 <br> TRIAL DATE: None |

1.  The motion of *(name of attorney):*   Charles Schwartz, Esq.
    to be relieved as counsel of record for *(name of client):*   Lisa Johnson
    a party to this action or proceeding, came on regularly for hearing at the date, time, and place indicated above.

2.  The following persons were present at the hearing:
    Charles Schwartz

**FINDINGS**

3.  Attorney has
    a.  [X] personally served the client with papers in support of this motion.
    b.  [X] served client by mail and submitted a declaration establishing that the service requirements of California Rules of Court, rule 376, have been satisfied.

4.  Attorney has shown sufficient reasons why the motion to be relieved as counsel should be granted and why the attorney has brought a motion under Code of Civil Procedure section 284(2) instead of filing a consent under section 284(1).

**ORDER**

5.  Attorney is relieved as counsel of record for client
    a.  [X] effective upon the filing of the proof of service of this signed order upon the client.
    b.  [ ] effective on *(specify date):*

6.  The client's [X] current [ ] last known   address and telephone number:
    2521 Civic Ave.
    Hayward, CA 94542    Telephone: (510) 247-0232
    If the client's current address is known, service on the client must hereafter be made at that address unless otherwise ordered in item 13. If the current address is not known, service must be made according to Code of Civil Procedure section 1011(b) and rule 202.5 of the California Rules of Court.

7.  a.  The next scheduled hearing in this action or proceeding is set for *(date, time and place):*
        December 14, 2006 at 9:00 a.m. in Department 113, *Wiley Manuel Courthouse, 661 Washington St*
        *Oakland. Ca 94607, 6th floor*
    b.  The hearing will concern *(subject matter):*
        Case Management Conference.

| |
|---|
| **NOTICE TO CLIENT** <br> You or your new attorney, if any, must prepare for and attend this hearing.    Page 1 of 2 |

Form Adopted for Mandatory Use
Judicial Council of California
MC-053 [Rev. January 1, 2003]
*Martin Dean's Essential Forms ™*

**ORDER GRANTING ATTORNEY'S**
**MOTION TO BE RELIEVED AS COUNSEL-CIVIL**

Code of Civil Procedure, § 284;
Cal. Rules of Court, rule 376

JOHNSON - CS-951

**EXHIBIT F**

8. The following additional hearings and other proceedings (including discovery matters) are set in this action *(describe the date, time, place, and subject matter of each)*:

Plaintiff's deposition has been set for November 15, 2006 at 10:00 a.m. at the law offices of BOORNAZIAN, JENSEN & GARTHE, 555 12th Street, Suite 1800, Oakland, California.

9. The trial in this action or proceeding:
   a. [X] is not yet set.
   b. [ ] is set for *(specify date, time, and place)*:

10. Client is hereby notified of the following effects this order may have upon parties.

---

**NOTICE TO CLIENT**

Your present attorney will no longer be representing you. You may not in most cases represent yourself if you are one of the parties on the following list:

- o   A guardian
- o   A conservator
- o   A trustee

- o   A personal representative
- o   A probate fiduciary
- o   A corporation

- o   A guardian ad litem
- o   An unincorporated association

If you are one of these parties, **YOU SHOULD IMMEDIATELY SEEK LEGAL ADVICE REGARDING LEGAL REPRESENTATION. Failure to retain an attorney may lead to an order striking the pleadings or to the entry of a default judgment.**

---

11. Client is notified that, if the client will be representing himself or herself, the client shall be solely responsible for the case.

---

**NOTICE TO CLIENT WHO WILL BE UNREPRESENTED**

You will not have an attorney representing you. You may wish to seek legal assistance. If you do not have a new attorney to represent you in this action or proceeding, and you are legally permitted to do so, you will be representing yourself. It will be your responsibility to comply with all court rules and applicable laws. If you fail to do so, or fail to appear at hearings, action may be taken against you. You may lose your case.

---

12. Client is notified that it is the client's duty to keep the court informed at all times of the client's current address.

---

**NOTICE TO CLIENT WHO WILL BE UNREPRESENTED**

The court needs to know how to contact you. If you do not keep the court and other parties informed of your current address and telephone number, they will not be able to send you notices of actions that may affect you, including actions that may adversely affect your interests or result in your losing the case.

---

13. The court further orders *(specify)*:

Date: November 8, 2006

*Winifred G. Smith*
Hon. Winifred Smith
JUDGE OR JUDICIAL OFFICER

---

MC-053 [Rev. January 1, 2003]
Martin Dean's Essential Forms™

**ORDER GRANTING ATTORNEY'S
MOTION TO BE RELIEVED AS COUNSEL-CIVIL**

Page 2 of 2

JOHNSON - CS-951

# EXHIBIT G

MC-050

ATTC. NEY OR PARTY WITHOUT ATTORNEY (Nc-, State Bar number, and address):
Douglas C. Fladseth (SB 033953420)
Law Offices of Douglas C. Fladseth
50 Old Courthouse Square
Suite 600
Santa Rosa, CA 95404
TELEPHONE NO. 707-545-2600   FAX NO. (Optional) 707-545-0552
E-MAIL ADDRESS (Optional): fladseth@aol.com
ATTORNEY FOR (Name): Plaintiff

FOR COURT USE ONLY
ENDORSED
FILED
ALAMEDA COUNTY
2006 NOV 29 PM 4:33
CLERK OF THE SUPERIOR COURT
BY ALPHONSINE OATES

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Alameda
STREET ADDRESS: 1225 Fallon Street
MAILING ADDRESS:
CITY AND ZIP CODE: Oakland 94612
BRANCH NAME: Unlimited Civil Division

CASE NAME: Johnson v. Alameda County Medical Center, et al.

| SUBSTITUTION OF ATTORNEY—CIVIL (Without Court Order) | CASE NUMBER RG05232747 |
|---|---|

THE COURT AND ALL PARTIES ARE NOTIFIED THAT (name): Lisa Johnson makes the following substitution:

1. **Former legal representative** ☐ Party represented self ☒ Attorney (name): Charles Schwartz
2. **New legal representative** ☐ Party is representing self* ☒ Attorney
   a. Name: Douglas C. Fladseth   b. State Bar No. (if applicable): 083420
   c. Address (number, street, city, ZIP, and law firm name, if applicable): Law Offices of Douglas C. Fladseth, 50 Old Courthouse Square, Suite 600, Santa Rosa, CA 95404
   d. Telephone No. (include area code): 707-545-2600
3. The party making this substitution is a ☒ plaintiff ☐ defendant ☐ petitioner ☐ respondent ☐ other (specify):

---

**\*NOTICE TO PARTIES APPLYING TO REPRESENT THEMSELVES**

- Guardian
- Conservator
- Trustee
- Personal Representative
- Probate fiduciary
- Corporation
- Guardian ad litem
- Unincorporated association

If you are applying as one of the parties on this list, you may NOT act as your own attorney in most cases. Use this form to substitute one attorney for another attorney. SEEK LEGAL ADVICE BEFORE APPLYING TO REPRESENT YOURSELF.

---

**NOTICE TO PARTIES WITHOUT ATTORNEYS**

A party representing himself or herself may wish to seek legal assistance. Failure to take timely and appropriate action in this case may result in serious legal consequences.

---

4. I consent to this substitution.
   Date: November   , 2006
   Lisa Johnson
   (TYPE OR PRINT NAME)   (SIGNATURE OF PARTY)

5. ☒ I consent to this substitution.
   Date: November 2?, 2006
   Charles Schwartz
   (TYPE OR PRINT NAME)
   LAW OFFICES OF CHARLES SCHWARTZ
   (SIGNATURE OF FORMER ATTORNEY)

6. ☒ I consent to this substitution.
   Date: November   , 2006
   Douglas C. Fladseth
   (TYPE OR PRINT NAME)
   LAW OFFICES OF DOUGLAS C. FLADSETH
   (SIGNATURE OF NEW ATTORNEY)

(See reverse for proof of service by mail)   Page 1 of 2

Form Adopted For Mandatory Use
Judicial Council of California
MC-050 [Rev January 1, 2006]
SUBSTITUTION OF ATTORNEY—CIVIL
(Without Court Order)
Legal Solutions Plus
Code of Civil Procedure, §§ 284(1) 285;
Cal. Rules of Court, rule 376

EXHIBIT G

PROOF OF SERVICE BY MAIL

1

2    I declare that:

3        I am employed in the County of Alameda, State of California. I am over 18 years of

4    age and not a party to the within action. My business address is 2128 Broadway, Oakland,

5    California 94612.

6        On the date signed hereunder, I served the within **SUBSTITUTION OF**

7    **ATTORNEY - CIVIL, NOTICE OF ATTORNEY'S LIEN FOR COSTS AND FEES**

8    by placing a true copy thereof, enclosed in a sealed envelope, with first class postage fully

9    prepaid thereon, in the United States Mail at Oakland, California, addressed as follows:

10   Douglas C. Fladseth, Esq.
     Law Offices of Douglas C. Fladseth
11   50 Old Courthouse Square, Suite 600
     Santa Rosa, CA 95404
12
     Gregory J. Rockwell, Esq.
13   BOORNAZIAN, JENSEN & GARTHE
     555 12th Street, Suite 1800
14   P.O. Box 12925
     Oakland, CA  94604-2925
15

16       I declare under penalty of perjury under the laws of California that the foregoing is

17   true and correct. Executed on November 29, 2006, at Oakland, California.

18

19

20                        Charles Schwartz

21

22

23

24

25

26

27

28

# EXHIBIT H

1   Charles Schwartz, (State Bar #49769)
    CHARLES SCHWARTZ, P.C.
2   2128 Broadway
    Oakland, CA  94612
3   (510) 986-1300

4   Attorneys for Plaintiff
    LISA JOHNSON

5

6

7

8                   SUPERIOR  COURT OF THE STATE OF CALIFORNIA

9                    IN AND FOR THE COUNTY OF ALAMEDA

10                       (NORTHERN DIVISION)

11                      (Unlimited Jurisdiction)

12  LISA JOHNSON,                        )        ACTION NO.: RG05232747
                                         )
13          Plaintiff,                   )
                                         )
14                                       )
    v.                                   )
15                                       )        **NOTICE OF ATTORNEY'S**
    ALAMEDA COUNTY MEDICAL               )        **LIEN FOR COSTS AND FEES**
16  CENTER, SCOTT ZELLER, M.D.,          )
    KURT BIEHL, M.D., JEANETTE           )
17  COTANCHE, R.N., LEONI ALFONSO, R.N., )
    MADELYNE MARKLE, R.N.,CEDRICK        )
18  FROWNER,                             )
    DOES 1 to 50, inclusive,            )
19                                       )
            Defendants.                  )
20  _____ )

21          NOTICE IS HEREBY GIVEN that Charles Schwartz, Esq. and CHARLES

22  SCHWARTZ, P.C., pursuant to their equitable rights and contract of employment, claim a

23  lien for attorneys fees in the sum of $30,284.31 and costs of $3,862.75.

24          The attorney fee lien claimed is pursuant to a written Attorney-Client Retainer

25  Agreement.   Charles Schwartz, Esq., with specific authority from the plaintiff, negotiated

26  a settlement of this case, thus performing his duties under his contract of employment with

27  the plaintiff, fulfilling the contingency that he settle this case and establishing his right to fees

28  and costs.

NOTICE OF ATTORNEY'S LIEN FOR COSTS AND FEES

**EXHIBIT H**

ENDORSED
FILED
ALAMEDA COUNTY

2006 NOV 29 PM 4: 33

CLERK OF THE SUPERIOR COURT
BY ALPHONSINE OATES

1    Lisa Johnson, plaintiff herein has breached her contract with her attorney by failing

2    to cooperate following the settlement of her case under terms she authorized.    Fracasse v.

3    Brent, 494 P.2d, 6 Cal.3d 784 (1972) speaks to the law authorizing a lien for attorney's fees

4    under circumstances such as this.

5    To the extent that such discharge occurs "on the courthouse steps," where the client

6    executes a settlement obtained after much work by the attorney, the factors involved

7    in a determination of reasonableness would certainly justify a finding that *the entire*

8    *fee was the reasonable value of the attorney's services.*    Fracasse v. Brent, at p.

9    791(italics added).

10    Dated:  November 28, 2006

11    CHARLES SCHWARTZ, P.C.

12

13    By: _____

14    Charles Schwartz

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT I

MAY-23-2007 09:01 From:FLADSETH LAW          7075450552          To:8268348964

Case 4:07-cv-03395-CW     Document 1-3     Filed 06/2?/2007     Page 1? of ??

*5675033*

FILED ALAMEDA COUNTY

MAY 23 2007

CLERK OF SUPERIOR COURT

BY _Alphonso Ortiz_
DEPUTY

1   Douglas C. Fladseth  (Bar No. 083420)
    **LAW OFFICES OF DOUGLAS C. FLADSETH**
2   50 Old Courthouse Square, Suite 600
    Santa Rosa, California 95404
3   Telephone: (707) 545-2600
    Facsimile: (707) 545-0552
4
5   **Attorney for Plaintiff**

6

7

8                   SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA

9                        NORTHERN DIVISION (UNLIMITED JURISDICTION)

10

11  LISA JOHNSON, by and through her         )   Case No. RG05232747
    Conservator, Sharon Toth,                )
12                                           )
                      Plaintiff,             )   **NOTICE OF MOTION AND MOTION**
13                                           )   **FOR LEAVE TO FILE AMENDED**
              vs.                            )   **COMPLAINT; MEMORANDUM OF**
14                                           )   **POINTS AND AUTHORITIES;**
    ALAMEDA COUNTY MEDICAL               )   **DECLARATION OF DOUGLAS C.**
15  CENTER, SCOTT ZELLER, M.D.,          )   **FLADSETH**
    KURT BIEHL, M.D., JEANETTE           )
16  COTANCHE, R.N., LEONI ALFONSO,       )   Reservation Number 715447
    R.N., MADELYNE MARKLE, R.N.,         )   Date: June 21, 2007
17  CEDRICK FROWNER, DOES 1 to 50,       )   Time: 9:00 A.M.
    inclusive,                           )   Dept: 31
18                                       )
                      Defendants.        )                   **BY FAX**
19  _____ )

20

21  TO EACH PARTY AND TO COUNSEL OF REORD FOR EACH PARTY:

22      YOU ARE HEREBY NOTIFIED THAT on June 21, 2007 at 9:00 A.M. in Department

23  31 of this Court, located at US Post Office Building, 201 Thirteenth Street, Oakland, CA 94612,

24  plaintiff will move the Court for an order permitting the filing of a First Amended Complaint. A

25  copy of the proposed amended complaint is attached hereto as Exhibit 1. The motion will be

26  made on the grounds that it is in the interests of justice and judicial economy to allow the

27

28              **NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

**EXHIBIT 1**

1  proposed amendment to add a cause of action for violation of plaintiff's 42 USC 1983 Civil

2  Rights.

3        Plaintiff Dr. Lisa Johnson is a licensed dentist who also has a B.S. in chemistry from

4  UCB, an MBA, a Masters degree in Finance and who also is a teacher and licensed real estate

5
   agent. Dr. Johnson was held involuntarily at defendant's governmental (county) facility, John
6

7  George Psychiatric Pavilion pursuant to Welfare and Institutions Code Section 5150.   In

8  deprivation of her civil rights, she was forced to remain in custody.  While in custody, she was

9  assaulted and raped by another detainee, one Cedrick Frowner.  Ms. Johnson had specifically

10  complained to defendants about Mr. Frowner's leering and threatening behavior towards her on

11
    at least two occasions on the 'day of' the event.  Despite such protests to staff regarding these
12

13  threats, Lisa was "heavily sedated" by staff and placed alone in an unsecured room to sleep for

14  the night.   Mr. Frowner gained access to the room when defendants not only failed to track and

15  control Frowner but also left the security door to plaintiff's room unsecured and unlocked.

16  Frowner thus gained access to the room where he committed violent criminal acts of physical and

17  sexual assault upon Lisa Johnson.

18
        Plaintiff also requests an order that the attached proposed amended pleading be deemed to
19

20  be the amended pleading and that it be deemed filed and served as of the date the motion is

21  granted.

22        The motion will be based upon this notice, the attached points and authorities and

23  declaration of Douglas C. Fladseth, the files and records in this action and any further evidence
24
    and argument that the Court may receive at or before the hearing.
25

26  ////

27

28        NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

DATED: May 22, 2007                    LAW OFFICE OF DOUG C. FLADSETH

1

2

3                                      DOUGLAS C. FLADSETH
                                       Attorney for Plaintiff
4

5                    **MEMORANDUM OF POINTS AND AUTHORITIES**

6

7        I.        Motion to Amend the Complaint

8              The instant motion for leave to file an amended complaint arises from a case based

9    originally on negligence. In June 2005 the plaintiff, Dr. Lisa Johnson, was placed on an

10   involuntary 72-hour hold pursuant to Code section 5150 at the John George Psychiatric Pavilion,

11   and was under exclusive care, custody and control of the defendant, Alameda County Medical

12   Center.

13

14             Defendant, Cedrick Frowner, was housed at the same facility, also a 5150, and was under

15   the custody and control of the Alameda County Medical Center (ACMC). Cedrick Frowner has a

16   known history of violence. Defendants negligently and carelessly failed to secure the door to the

17   plaintiff's room and negligently and carelessly failed to monitor and secure defendant Frowner.

18   Frowner had been allowed in the same initial holding area with Dr. Lisa Johnson and others for

19   hours and despite Dr. Johnson's complaint to staff at least twice that defendant Frowner was

20   scaring her and leering at her and making crude, vulgar and threatening gestures to her.

21

22             Defendant thereafter medically sedated Lisa Johnson for the night and placed her in what

23   was supposed to be a locked, secured room. However, defendant failed to provide a secure and

24   locked door and failed to monitor and inspect and maintain security such that defendant Frowner

25   was allowed access to Lisa Johnson's private room. Frowner sexually put his erect penis in her

26   mouth while she was asleep. Once Lisa was awake, Cedrick Frowner further attempted to

27

28              **NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

1   engage in genital intercourse with her and tried to stifle her screaming and blocked her way from

2   attempting to escape the room.  As a result, the plaintiff suffered personal injury and severe

3   emotional distress.

4        ACMC violated the plaintiff's civil rights by failing to provide a safe environment, failing

5   to protect against dangerous assaults, being deliberately indifferent to plaintiff's rights and safety,

6   and for failing to secure their facility, including with properly trained security guards.

7

8        Amendment of the complaint is necessary at this time after previous counsel

9   unsuccessfully attempted to resolve the case informally absent this cause of action.  This is an

10   appropriate and reasonably necessary cause of action under the circumstances of this case.

11

12        A governmental entity which forcibly places a 72-hour medical hold in a public custodial

13   facility and which fails to provide a safe environment to and protect the victim from a violent

14   inmate subjects the facility to a cause of action for civil rights violation pursuant to 42 USCA

15   1983.

16        Federal Law 42 USCA 1983 provides a cause of action for "the deprivation of any rights,

17   privileges, or immunities secured by the Constitution and laws" by any person acting "under

18   color of any statute, ordinance, regulation, custom, or usage of any State or Territory." (*Huffman*

19

20   *v. County of Los Angeles* (9th Cir. 1998) 147 F.3d 1054, 1058-1059.)

21        "The high court has recognized "that in certain limited circumstances the Constitution

22   imposes upon the State affirmative duties of care and protection with respect to particular

23   individuals." (*Deshaney v. Winnebago Cty. Soc. Servs. Dept.*, 489 U.S. at p. 198, 109 S.Ct. 998.)

24

25   When the state has taken a person into custody and has deprived the individual of the ability to

26   care for himself or herself, the state must provide for basic needs such as "food, clothing, shelter,

27

28      **NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

1    medical care, and reasonable safety...." (*Id.* At p. 200, 109 S.Ct. 998.)  As the United States

2    Supreme Court has explained, "it is the State's affirmative act of restraining the individual's

3    freedom to act on his own behalf – through incarceration, institutionalization, or other similar

4    restraint of personal liberty – which is the 'deprivation of liberty' triggering the protections of the

5    Due Process Clause..." (*Ibid.*; see also *Huffman v. County of Los Angeles* (9th Cir. 1998) 147 F.

6

7    3d 1054, 1058-1059.)

8    To sustain a cause of action under <u>Section 1983</u>, the plaintiff must show:

9    1.    Plaintiff possessed a constitutional right of which she was deprived.  Dr. Johnson was

10   forcibly taken into custody on a 72-hour hold pursuant to Code section 5150, housed at the John

11
     George Psychiatric Pavilion and was under the exclusive and involuntary care, custody and
12
     control of AMAC.  Plaintiff has a constitutional right to be reasonably protected and to be safe
13
14   under such circumstances.  A patient with a history known to defendants as a violent sexual

15   predator was allowed to sexually assault Dr. Lisa Johnson.  The defendant, AMAC, failed to

16   provide for plaintiff's reasonable safety thereby denying and depriving her of her constitutional

17
     rights.
18
19   2.    The hospital/municipality showed "deliberate indifference" to plaintiff's rights.  In this case,

20   the defendants (AMAC) knew, or should have known, that defendant Frowner had a violent

21   history.  Also, the defendant facility has a repeated history of assault and death to staff and

22   patients.  (Please see Exhibit 2, attached hereto.)  As such, they are on notice of the need to

23
     provide particular safeguard to patients, especially to threatened patients such as Dr. Lisa
24
     Johnson.  Defendant facility had been repeatedly advised by state regulatory agencies (CAL-
25
26   OSHA) that their security measures are inadequate and place the staff and patients at undue risk

27

28                    NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

1   due to the inadequacy of security and lack of proper training of the security guards.

2   3.   ACMC's failure to provide adequate safety measures lead to the violent assault upon Dr.

3   Johnson in a violation of her right to safety and deprivation of her constitutional rights to not be

4   deprived of her life, liberty and property without due process of law.  Defendant created the

5   damages to Lisa Johnson by forcibly holding her against her will and by subjecting her to

6

7   unreasonable risks and specific threats of danger without adequate and reasonable safeguards and

8   protection against known serious threats to her life and well being.

9        In addition, courts have recognized that a special relationship may give rise to a duty by a

10  public entity to protect a person falling within that special relationship.  (*MacDonald v. State of*

11  *California* (1991) 230 Cal.App.3d 319, 281 Cal.Rptr. 317.)  A special relationship will be found

12

13  where (1) there is a voluntary assumption by the public official of a duty toward the injured

14  party; (2) where the public entity or official induce, the victim's reliance on a promise, express or

15  implied, that it would protect him, or (3) where the victim was dependent upon the public entity

16  or official for protection because the official either created the peril or increased or changed the

17  risk which would have otherwise existed by lulling the victim into a false sense of security and

18

19  perhaps preventing other assistance from being sought.  (*Davidson v. City of Westminster* (1982)

20  32 Cal.3d 197, 206-208, 185 Cal.Rptr. 252, 649 P.2d 894; *Jackson v. Clements* (1983) 146

21  Cal.App.3d 983, 988, 194 Cal.Rptr. 553.)

22      Rutter CACIVP CH. 6-E at (1) [6:637] states: Discretion of court: Motions for leave to

23  amend the pleadings are directed to the sound discretion of the judge.  'The court *may*, in

24  *furtherance of justice*, and *on such terms as may be proper*, allow a party to amend any

25  pleading…' [CCP§473(a)(1); and see CCP§576]

26

27

28         NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

1    Factor's affecting court's exercise of discretion: (a) [6:638] Policy favoring amendment:

2    First of all, judicial policy favors resolution of all disputed matters between the parties in the

3    same lawsuit.  Thus, the court's discretion will usually be exercised *liberally* to *permit*

4    amendment of the pleadings.  [See *Nestle v. Santa Monica* (1972) 6 C3d 920, 939, 101 CR 568,

5    581; *Mabie v. Hyatt* (1998) 61 CA4th 581, 596, 71 CR2d 657, 666 (citing text).]

6

7    1) [6:639] Denial rarely justified: The policy favoring amendment is so strong that it is a

8    rare case in which denial of leave to amend can be justified: 'If the motion to amend is *timely*

9    made and the granting of the motion will *not prejudice* the opposing party, it is *error to refuse*

10   permission to amend and where the refusal also results in a party being deprived of the right to

11   assert a meritorious cause of action or a meritorious defense, it is not only error but an abuse of

12   discretion.'  [*Morgan v. Sup.Ct.* (1959) 172 CA2d 527, 530, 343 P2d 62, 64 (emphasis added);

13   see *Mabie v. Hyatt*, supra, 61 CA4th at 596, 71 CR2d at 666 (citing text).]

14

15   (b) [6:640] Nature of proposed amendment: Subject to the limitations noted below, the

16   court has discretion to permit *any* sort of amendment; i.e., the amendment need not relate to the

17   claims or defenses originally pleaded.  Thus, amended pleadings may set forth entirely different

18   claims, add new parties, seek a different or greater remedy, etc.

19

20   (c) [6:644] Validity of proposed amendment: Ordinarily, the judge will *not* consider the

21   validity of the proposed amended pleading in deciding whether to grant leave to amend.  Grounds

22   for demurrer or motion to strike are premature.  After leave to amend is granted, the opposing

23   party will have the opportunity to attack the validity of the amended pleading; ¶ 6:688. [See

24   *Kittredge Sports Co. v. Sup.Ct. (Marker, U.S.A.)* (1989) 213 CA3d 1045, 1048, 261 CR 857,

25   859.]

26

27

28        **NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

(d) [6:652] Proximity to trial or during trial: Courts are bound to apply a policy of great liberality in permitting amendments to the complaint 'at any stage of the proceedings, up to and including trial,' *absent prejudice* to the adverse party. [*Atkinson v. Elk Corp.* (2003 109 CA4th 739, 761, 135 CR2d 433, 449 (internal quotes omitted)]

3) [6:654] Same policy under 'fast track' rules: An otherwise proper amendment should not be refused solely because the case is on fast track. This is true even where the amendment will require a *continuance* of the trial date. [*Honig v. Financial Corp. of America* (1992) 6 CA4th 960, 967, 7 CR2d 922, 926]

2) [6:659] Absent prejudice, delay alone not ground for denial: If the delay in seeking the amendment has not misled or prejudiced the other side, the liberal policy of allowing amendments prevails. Indeed, it is an *abuse of discretion* to deny leave in such a case ... even if sought as late as the time of trial! [*Higgins v. Del Faro* (1981) 123 CA3d 558, 564-565, 176 CR 704, 707-708]

II. Conclusion

For the foregoing reasons, this court should grant this motion for leave to file an amended complaint because failure to do so would deprive the plaintiff of her constitutional rights under 42 USCA 1983.

DATED: May 22, 2007                    LAW OFFICES OF DOUGLAS C. FLADSETH

                                       DOUGLAS C FLADSETH,
                                       Attorney for Plaintiff

## DECLARATION OF DOUGLAS C. FLADSETH

1

2     I, DOUGLAS C. FLADSETH, declare:

3     1.     I am an attorney at law, licensed to practice before all the courts in the State of

4  California, and am attorney of record for plaintiff in the above captioned matter.

5     2.     I have personal knowledge of the facts set forth in this declaration and if called

6

7  upon, could and would competently testify to the following.

8     3.     Attached hereto as Exhibit 1 is a true and correct copy of plaintiff's proposed First

9  Amended Complaint for Damages.

10     4.     Attached hereto as Exhibit 2 is a true and correct copy of articles regarding

11  criminal assaults at Alameda County Medical Center.

12

13     I declare under penalty of perjury under the laws of the State of California that the

14  foregoing is true and correct.  Executed at Santa Rosa, California.

15  Dated: May 22, 2007                    LAW OFFICES OF DOUGLAS C. FLADSETH

16

17                                         DOUGLAS C. FLADSETH,
                                           Attorney for Plaintiff
18

19

20

21

22

23

24

25

26

27

28            NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

EXHIBIT  I

1  **Douglas C. Fladseth**  (Bar No. 083420)
   **LAW OFFICES OF DOUGLAS C. FLADSETH**
2  **50 Old Courthouse Square, Suite 600**
   **Santa Rosa, California  95404**
3  **Telephone:  (707) 545-2600**
   **Facsimile:  (707) 545-0552**
4
   **Attorney for Plaintiff**
5

6

7

8              SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA

9                 NORTHERN DIVISION (UNLIMITED JURISDICTION)

10

11  LISA JOHNSON, by and through her      )    Case No.  RG05232747
    Conservator, Sharon Toth,             )
12                                        )    **FIRST AMENDED COMPLAINT FOR**
                  Plaintiff,              )    **DAMAGES**
13                                        )
                  vs.                     )
14                                        )
    ALAMEDA COUNTY MEDICAL                )
15  CENTER, SCOTT ZELLER, M.D.,           )
    KURT BIEHL, M.D., JEANETTE            )
16  COTANCHE, R.N., LEONI ALFONSO,        )
    R.N., MADELYNE MARKLE, R.N.,          )
17  CEDRICK FROWNER, DOES 1 to 50,        )
    inclusive,                            )
18                                        )
                  Defendants.             )
19  _____  )

20        Plaintiff LISA JOHNSON alleges as follows:

21                **FACTS COMMON TO ALL CAUSES OF ACTION**

22        1.     Defendant CEDRICK FROWNER is an individual, and at all times herein

23  mentioned, is a resident of Alameda County, California.

24        2.     Defendant ALAMEDA COUNTY MEDICAL CENTER is, and at all time herein

25  mentioned, a public entity organized and existing under the laws of the State of California.

26        3.     Defendants DOE 1 through DOE 50, inclusive, are sued herein under fictitious

27  names.  Their true names and capacities are unknown to Plaintiff.  When their true names and

28                       FIRST AMENDED COMPLAINT FOR DAMAGES

1    capacities are ascertained, Plaintiff will amend this complaint by inserting their true names and

2    capacities of said defendants after they are ascertained. The plaintiff is informed and believes

3    that each fictitiously named defendant is responsible for the matters herein alleged.

4        4.    The plaintiff is informed and believes and thereon alleges that at all times herein

5    mentioned, each defendant, including all defendants sued under fictitious names, was the agent

6    and employee of each of the remaining defendants, and in doing the things hereinafter alleged,

7    was acting within the course and scope of this agency or employment.

8        5.    The plaintiff is informed and believes that on or about June 17, 2005 defendant

9    CEDRICK FROWNER was housed at the John George Psychiatric Pavilion pursuant to an

10    emergency psychiatric evaluation under the custody and control of defendants ALAMEDA

11    COUNTY MEDICAL CENTER, and DOES 1 to 50.

12        6.    The plaintiff is informed and believes that defendant CEDRICK FROWNER had

13    a history of prior brutality and criminal convictions and was known to defendants ALAMEDA

14    COUNTY MEDICAL CENTER, and DOES 1 to 50 as an individual prone to violent and

15    assaultive behavior.

16        7.    On or about June 17, 2005, at approximately 5:00 a.m., the plaintiff was housed at

17    the John George Psychiatric Pavilion pursuant to an emergency psychiatric evaluation under the

18    custody and control of defendants ALAMEDA COUNTY MEDICAL CENTER, and DOES 1 to

19    50.

20        8.    At said time and place, the defendants, ALAMEDA COUNTY MEDICAL

21    CENTER, and DOES 1 to 50, and each of them, negligently and carelessly failed to secure the

22    door to the plaintiff's room and negligently and carelessly failed to monitor and secure the

23    whereabouts of defendant CEDRICK FROWNER so that defendant CEDRICK FROWNER was

24    allowed access into the plaintiff's room.

25        9.    Once inside the plaintiff's room defendant CEDRICK FROWNER sexually

26    assaulted the sleeping plaintiff by putting his erect penis into the plaintiff's mouth. Once the

27    plaintiff was awake, he attempted to engage in genital intercourse with her.

28

**FIRST AMENDED COMPLAINT FOR DAMAGES**

2

10.     As a result of the acts of defendant CEDRICK FROWNER and the negligence and carelessness of the defendant ALAMEDA COUNTY MEDICAL CENTER, and DOES 1 to 50, as alleged, the plaintiff suffered personal injury and severe emotional distress.

11.     On July 21, 2005, the plaintiff submitted a claim of damages to defendant ALAMEDA COUNTY MEDICAL CENTER for the injuries alleged in this complaint. Defendant ALAMEDA COUNTY MEDICAL CENTER rejected the plaintiff's claim of damages by operation of law on September 2, 2005.

12.     On September 2, 2005, Sharon Toth, a principal in IMT Associates, was appointed as Conservator of the plaintiff with the authority to bring this action on behalf of the plaintiff.

## FIRST CAUSE OF ACTION

### (Sexual Battery - Civil Code §1708.5)

13.     The plaintiff refers to and incorporates herein by reference paragraphs 1 through 12, above.

14.     The above conduct by defendant CEDRICK FROWNER is a violation of Civil Code §1708.5 in that CEDRICK FROWNER acted with the intent to cause a harmful or offensive contact by the use of his intimate part and a sexually offensive contact with the plaintiff directly occurred.  Defendant CEDRICK FROWNER's conduct also caused the plaintiff to suffer imminent apprehension of such a contact occurring.

15.     At no time did the plaintiff consent to any of the acts of defendant CEDRICK FROWNER alleged in paragraph 9, above.

WHEREFORE, Plaintiff requests relief as hereinafter provided.

## SECOND CAUSE OF ACTION

### (Assault)

16.     The plaintiff refers to and incorporates herein by reference paragraphs 1 through 15 above.

17.     In doing the acts as alleged above, defendant CEDRICK FROWNER intended to

**FIRST AMENDED COMPLAINT FOR DAMAGES**

3

1    cause or to place the plaintiff in apprehension of a harmful or offensive contact with her person.

2        18.    As a result of defendant CEDRICK FROWNER's acts as alleged above, the

3    plaintiff, in fact, was placed in great apprehension of a harmful or offensive contact with her

4    person.

5        WHEREFORE, Plaintiff requests relief as hereinafter provided.

6    **THIRD CAUSE OF ACTION**

7    **(Intentional Infliction of Emotional Distress)**

8        19.    The plaintiff refers to and incorporates herein by reference paragraphs 1 through

9    18 above.

10        20.    Defendant CEDRICK FROWNER's conduct was intentional, outrageous,

11    malicious and done with ill will and with the intent of causing the plaintiff to suffer humiliating

12    mental anguish, and emotional and physical distress.

13        21.    Defendant CEDRICK FROWNER's conduct was so severe and outrageous that as

14    a proximate result Plaintiff suffered humiliation, mental anguish and emotional and physical

15    distress.

16        WHEREFORE, Plaintiff requests relief as hereinafter provided.

17    **FOURTH CAUSE OF ACTION**

18    **(Negligence)**

19        22.    The plaintiff refers to and incorporates herein by reference paragraphs 1 through

20    21 above.

21        23.    Defendants ALAMEDA COUNTY MEDICAL CENTER and DOES 1 to 50

22    owed a duty to plaintiff to provide secure facilities so that the plaintiff would not be subject to

23    harm from other patients.  The defendants and each of them carelessly and negligently breached

24    their duty to the plaintiff by allowing defendant CEDRICK FROWNER access to the plaintiff's

25    room while she slept and by allowing defendant CEDRICK FROWNER to engage in the conduct

26    alleged in paragraph 9, above.

27        24.    As a result of the carelessness and negligence of the defendants ALAMEDA

28

FIRST AMENDED COMPLAINT FOR DAMAGES

4

1  COUNTY MEDICAL CENTER and DOES 1 to 50 the plaintiff suffered injuries and damages as

2  alleged herein.

3  　　　　　WHEREFORE, Plaintiff requests relief as hereinafter provided.

4  　　　　　　　　　　　**FIFTH CAUSE OF ACTION**

5  　　　　　　　　　　　　**(Respondeat Superior)**

6  　　　　25.　　The plaintiff refers to and incorporates herein by reference paragraphs 1 through

7  24 above.

8  　　　　26.　　At all times herein mentioned, defendant DOES 1 to 50 were the agents and

9  employees of defendant ALAMEDA COUNTY MEDICAL CENTER and, in doing the acts

10  herein described and referred to, were acting in the course and within the scope of their authority

11  as agents and employees, and in the transaction of the business of the ALAMEDA COUNTY

12  MEDICAL CENTER.  Defendant ALAMEDA COUNTY MEDICAL CENTER is therefore

13  liable to the plaintiff for the acts of defendants DOES 1 through 50 as heretofore alleged.

14  　　　　　WHEREFORE, Plaintiff requests relief as hereinafter provided.

15  　　　　　　　　　　　**SIXTH CAUSE OF ACTION**

16  　　**(Employer's Negligent Hiring, Training, and/or Retention of Unfit Employee)**

17  　　　　27.　　The plaintiff refers to and incorporates herein by reference paragraphs 1 through

18  26, above.

19  　　　　28.　　The plaintiff is informed and believes, and based on that information and belief,

20  alleges that defendant ALAMEDA COUNTY MEDICAL CENTER knew, or in the exercise of

21  reasonable care, should have known that DOES 1 to 50 were incompetent and unfit to perform

22  the job duties that they were hired to perform, and that the failure to perform these job duties

23  involved the risk of harm to others such as the plaintiff.

24  　　　　29.　　Defendant ALAMEDA COUNTY MEDICAL CENTER knew, or should have

25  known, that defendant DOES 1 to 50 were unfit to supervise, protect and prevent harm and

26  violence to those persons similarly situated as plaintiff.

27  　　　　30.　　The negligence of the defendants, and each of them, was the proximate cause of

28  　　　　　　　　　**FIRST AMENDED COMPLAINT FOR DAMAGES**

1    the plaintiff's injuries.

2        WHEREFORE, Plaintiff requests relief as hereinafter provided.

3                        **SEVENTH CAUSE OF ACTION**

4              **(Civil Rights Violation Pursuant to 42 UCSA §1983)**

5        31.    The plaintiff refers to and incorporates herein by reference paragraphs 1 through

6    30, above.

7        32.    Plaintiff possessed a constitutional right of which she was deprived. Plaintiff

8    was forcibly taken into custody on a 72-hour hold pursuant to Code section 5150, housed at the

9    John George Psychiatric Pavilion and was under the exclusive and involuntary care, custody and

10   control of ALAMEDA COUNTY MEDICAL CENTER. Plaintiff has a constitutional right to be

11   reasonably protected and to be safe under such circumstances. A patient with a history known to

12   defendants as a violent sexual predator was allowed to sexually assault plaintiff. The defendant,

13   ALAMEDA COUNTY MEDICAL CENTER, failed to provide for plaintiff's reasonable safety

14   thereby denying and depriving her of her constitutional rights.

15       33.    ALAMEDA COUNTY MEDICAL CENTER showed "deliberate indifference" to

16   plaintiff's rights. ALAMEDA COUNTY MEDICAL CENTER knew, or should have known,

17   that defendant CEDRICK FROWNER had a violent history. ALAMEDA COUNTY MEDICAL

18   CENTER has a repeated history of assault and death to staff and patients. As such, they are on

19   notice of the need to provide particular safeguard to patients, especially to threatened patients

20   such as plaintiff. ALAMEDA COUNTY MEDICAL CENTER had been repeatedly advised by

21   state regulatory agencies (CAL-OSHA) that their security measures are inadequate and place the

22   staff and patients at undue risk due to the inadequacy of security and lack of proper training of

23   the security guards.

24       34.    ALAMEDA COUNTY MEDICAL CENTER's failure to provide adequate safety

25   measures lead to the violent assault upon plaintiff in a violation of her right to safety and

26   deprivation of her constitutional rights to not be deprived of her life, liberty and property without

27   due process of law. ALAMEDA COUNTY MEDICAL CENTER created the damages to

28                    **FIRST AMENDED COMPLAINT FOR DAMAGES**

                                    6

1   plaintiff by forcibly holding her against her will and by subjecting her to unreasonable risks and

2   specific threats of danger without adequate and reasonable safeguards and protection against

3   known serious threats to her life and well being.

4                                          **PRAYER**

5          WHEREFORE Plaintiff prays for judgment against defendants and each of them as

6   follows:

7          1.      Medical, hospital and related health care bills, according to proof;

8          2.      Loss of earnings;

9          3.      General damages;

10         4.      Punitive damages;

11         5.      For prejudgment and post judgment interest;

12         6.      Costs of suit herein incurred;

13         7.      For any other relief that is just and proper.

14

15   DATED: May 22, 2007                    LAW OFFICE OF DOUG C. FLADSETH

16

17

18                                          DOUGLAS C. FLADSETH
                                            Attorney for Plaintiff

19

20

21

22

23

24

25

26

27

28

                        **FIRST AMENDED COMPLAINT FOR DAMAGES**

                                             7

EXHIBIT 2

2035 ASHBY AVE.  BERKELEY  510-644-4930
WWW.EXPRESSIONSGALLERY.ORG

SHOW RUNS:
APRIL 21ST-JUN
Painting, Prints, Photogra
Jewelry, Fiber Arts, Sculpture a

# The Lunatics Have Taken Over the Asylum

Staffers at Alameda County's psych hospital have long begged for better protections against violent patients. It took a doctor's murder to get them what they wanted.

**By Susan Goldsmith**

Published: February 18, 2004

There must have been an awful commotion, although no one heard a thing. It was a busy county psychiatric hospital, after all, and the Unit C exam room door was closed. But inside, a terrible story was unfolding. During a routine afternoon checkup this past November, Dr. Erlinda Ursua was slain by one of her own patients, a severely mentally ill woman who had been brought to John George Psychiatric Pavilion that morning. The doctor was beaten savagely, according to sheriff's department records, her head and face smashed again and again into a solid object. She also was strangled, according to a not-yet-released autopsy report. Outside the door



and just up the hall, nurses, mental health specialists, and doctors went about their work completely unaware of what was happening inside the room. Although the examination room had a panic button, the sixty-year-old MD, who stood only four-foot-eleven, couldn't get to it during the attack.



**Chris Duffey**

John George Psychiatric Pavilion has been the site of numerous assaults, state and federal inquiries, and, last fall, the brutal murder of a doctor by her patient.

A hospital janitor made the ghastly discovery later that afternoon. Ricardo Simpson opened the exam room door so he could empty the trash and found the doctor's body on the floor. Her physician's coat was open and her shoes sat next to her feet. An earring, a piece of a jade bracelet, and paperwork were strewn around. No one else was in the room.

Alameda County Sheriff's Department detectives told Lorenzo Ursua that his wife probably didn't die during the beating. She lay there undiscovered for an hour and a half, they estimated, and was most likely alive for at least some of that time.

The suspected killer, 37-year-old Rene Pavon, whose hands were scratched and swollen when she was questioned by detectives later



Rene Pavon, 37, has pleaded not guilty in the murder of Dr. Erlinda Ursua.



**Courtesy Lorenzo Ursua**
Lorenzo and Erlinda Ursua



**Courtesy Lorenzo Ursua**
Lorenzo and Erlinda Ursua



**Chris Duffey**
Former Alameda County Medical Center trustee Robert Phillips



**Chris Duffey**
John George compliance director Mary Ferguson

that day, said she became upset when the doctor tried to take her pulse. "I punched her in the neck and her blue wallet and keys went up in the air," she reportedly said. Then, according to a sheriff's department report, Pavon began to ramble unintelligibly.

While staffers at the 88-bed psychiatric hospital were deeply saddened by their colleague's murder, hardly anyone was shocked. For years, they have complained of assaults by patients, many of whom are severely mentally ill and are brought to the San Leandro facility against their will by the cops. Some are homeless; others are transferred from area jails. Many show up after going off their psychiatric medications and arrive in frightening states: They are brought in unkempt and reeking, covered in feces, barking like dogs, or dressed up in costumes. Patients also have been admitted with knives and other weapons stashed in their pockets.

"I've seen so many of my co-workers taken out on stretchers. It's terrible," says Cheryl Omeregie, a mental health specialist at John George who is out on stress leave after saving a colleague's life during a Christmas Day stabbing in 2002.

Stretchers for wounded staff members were all too common in the twelve months prior to Erlinda Ursua's death. One nurse was stabbed twice in the back. Another was punched in the face and had his nose broken. A staff member's head was slammed into a wall so hard she suffered a concussion, and another nearly lost an eye to a pencil-wielding patient. A doctor's jaw was dislocated, and one aide's knee was injured so severely that it required surgery and now has to be replaced. These, according to Dr. Harold Cottman, a hospital psychiatrist, are in addition to numerous less-serious assaults. In 2003 alone, at least six hospital employees went out on workers' compensation leave following patient attacks. But because of poor record-keeping, a top hospital administrator was unable to say just how many other employees went on leave in prior years. Only one thing was certain, the administrator said: "I can tell you there were others."

Despite the repeated attacks and a growing chorus of employee complaints, hospital administrators made few real improvements. By last April, safety had become such a concern at John George that five staffers approached the California division of Occupational Safety and Health, the state's workplace safety agency, to complain.

In June, following an investigation, Cal-OSHA cited the hospital and fined it $30,000 for failing to report two of the attacks as required by law. The state agency also issued a citation for the hospital's failure to maintain an adequate worker safety program. "On a regular basis," one of the citations reads, "employees are suffering injuries from violent patients who assault the employees."



**Chris Duffey**

Hospital psychiatrist Harold Cottman

Administrators at the financially strapped county hospital had heard much of it before, and not just from their employees. Cal-OSHA also had cited the hospital back in 1998 for an inadequate workplace safety program. This time around, the agency took the unusual step of making three recommendations that spelled out precisely what they believed needed to be done to protect hospital staff. But rather than implement any of the suggestions, county administrators appealed the citations and fashioned their own set of improvements -- which a number of staff members say were totally inadequate.

"There was no visible change in safety between Cal-OSHA and Dr. Ursua's murder," says nurse Stacey Johnson, who suffered a broken nose when he was attacked by a patient wearing a Spider-Man costume. Neither he nor the other staff members interviewed for this story were surprised by the hospital administrators' feeble response. It was what they'd come to expect. "We'd been complaining about safety for years, and we kept saying eventually somebody was going to get hurt really bad," he says. "They didn't listen. They didn't think there was a problem."

Five months after Cal-OSHA issued its citations, Dr. Erlinda Ursua was dead.

Dr. Ursua was not one of the complainers. The general practitioner loved her job and went about it cheerfully, despite the less-than-cheery workplace environment, her colleagues say. A native of the Philippines, she immigrated to the United States in 1975 with her husband and oldest daughter. Another daughter was born while Ursua pursued her California medical license. She took a job in Alameda County's public health system in 1977 and never left.

Colleagues describe Dr. Ursua as a devoted physician who treated her patients with great respect and patience. She didn't fit the doctor-with-an-ego stereotype; co-workers say she regularly ate her lunch with hospital housekeepers rather than with her medical colleagues. "They used to all share their lunches," recalls Soccoro Smith, a John George nurse for twelve years who has been on workers' compensation leave since 2001. Smith was attacked twice in one month by different patients who hit, kicked, and punched her in the head and neck. "Dr. Ursua comforted me and calmed me down. I was ready to walk off the job," she says.

Dr. Ursua was a stylish woman with a strong maternal streak that extended to both family and patients. Each year she spent a week back in the Philippines, donating her time and medical skills to some of her homeland's poorest and sickest residents.

Lorenzo Ursua, an accountant for the City of San Francisco, is clearly proud of his wife's accomplishments. He arrived for an interview with photos from his wife's most recent medical mission. The pictures show her with her patients: lepers, people with horrible disfiguring tumors, victims of elephantiasis.

Lorenzo says his wife never expressed any fears about her safety, but at work, colleagues say, she often took precautions, such as requesting that a third person be in the room when she conducted an exam. Ursua had not, however, asked a nurse to accompany her into the exam room with Pavon, even though the patient's chart showed she had assaulted a roommate that

Having a third person present for medical exams was not compulsory -- simply an option if a doctor felt it necessary. A mandatory buddy system, however, was among Cal-OSHA's recommendations the previous June. Although the final decision was left to hospital administrators, the state inspectors strongly urged them to follow through. The agency also encouraged hospital managers to hire trained police officers to patrol the facility and to install a video surveillance system. "Because of the past history of assaults, we took the extraordinary step of making specific recommendations," explains Cal-OSHA spokesman Dean Fryer.

Trustees of the Alameda County Medical Center board of directors, who oversee John George in addition to two other public hospitals and a network of outpatient clinics, were told last summer that the administrators intended to follow OSHA's recommendations, says former trustee Robert Phillips, who resigned last October. "[Chief Operating Officer] Efton Hall assured us that the entire [Cal-OSHA] safety plan would be implemented," he says. "He assured us they'd make significant progress."

Instead, administrators came up with their own plan. "We told administrators to fix it, and they didn't do it," Phillips says. "We were told they were going to make the buddy system compulsory and that they were going to increase security."

Hall, who has since been promoted to interim CEO of the Alameda County Medical Center, strongly denied making such a promise. "Absolutely not," he says. "I never said that."

Several other former and current trustees contacted for the story did not return phone calls. But former Alameda County Medical Center CEO Ken Cohen backs Hall's version. According to Cohen, who attended the board meetings, Hall told trustees that significant safety improvements would be made, but never vowed to implement Cal-OSHA's specific recommendations.

Nor was John George under any obligation to do so, says Mary Ferguson, director of quality and compliance for all of the county's public health facilities. These were suggestions and nothing more. The administrators' improvements, she says, included requesting better-trained security guards from ABC Security Services, which has a countywide security contract. "We changed from two to three guards, changed their qualifications, and we relocated where they would stand," she says. Prior to the Cal-OSHA citations, the hospital used standard-issue security guards. Afterward, it began using better-trained guards, of a caliber similar to those ABC provides for Oakland Airport security.

The hospital, Ferguson says, also made mandatory a once-voluntary policy of screening patients with a metal-detector wand prior to admission. In addition, administrators insisted that the hospital's lobby doors remain closed. This, they hoped, would discourage the assaults that sometimes occurred near the front entrance. According to Ferguson, the hospital had seriously considered a number of security changes and implemented some of them, including the metal-detector wands, even before the state inspectors showed up. "We didn't need Cal-OSHA to come in and tell us to be concerned with safety," she says.

Six staff members interviewed for this story describe a very different administration. They say hospital managers repeatedly failed to make the needed improvements even after the state

agency stepped in last year. According to staff accounts, managers seemed to care little about the frightening assaults and told employees the attacks were simply part of the job.

The hospital's own record-keeping, in fact, tells a troubling story of indifference. When asked how many John George employees had gone out on workers' comp leave in the years prior to 2003, Ferguson hit a roadblock. She could definitively say six people had gone on leave last year, but hospital records were so sloppy she was unable to tell how many others there were. "One of the things we've done once this became a big issue is we improved reporting," she says. "We retrained the entire hospital and said we can't correct the problem unless we know what the problems are."

Although the hospital's paper trail is incomplete, the nightmarish attacks are unforgettable for many employees. In their interviews with a Cal-OSHA inspector last summer, the five staff members described an environment in which being hit, kicked, punched, and bitten by patients was routine. Also commonplace, they said, were inattentive, uninterested administrators.

Debra Mapp, a nineteen-year mental health specialist at John George, recalled an attack two to three years ago in which a mentally ill man coming off cocaine was masturbating in the lobby. She asked him to stop and he became angry. A while later, in one of the hospital's hallways, he threw her into the wall, knocking her unconscious. "I got no assistance from anybody," Mapp told the Cal-OSHA inspector. "I had to drive myself to the emergency room."

Mapp also recounted a disturbing incident from just a week before her conversation with the inspector. When a patient on one of her shifts became agitated and threatening, Mapp said she got frightened and pushed a panic button to summon help. "You are supposed to drop what you are doing and come when that panic button is pushed," she told the inspector. "Nobody came."

Nurse Vicki Filomeo, who has worked at the hospital for ten years, was asked by the inspector what assaults she could remember from the previous six months. She rattled off a disturbing list: "Ruby got a concussion three months ago. Dr. Zeller got hit in the face and dislocated his jaw. I was hit with a garbage can." The three other employees interviewed had similar stories.

Several employees, including Johnson, pointed to the inadequacy of the unarmed security at the unit. The guards, they claimed, did little if anything to protect staff from out-of-control patients. "They're fearful and they're afraid of getting hurt themselves," Johnson told the inspector.

Employees viewed ABC Security's guards as all but useless, according to numerous staffers. Some reportedly stole from nurses and doctors, psychiatrist Cottman says, while others didn't speak English. And hospital employees told Cal-OSHA that nearly all of their would-be protectors feared the patients. ABC Security Services did not return phone calls for this story.

In an interview with the *Express*, mental health specialist Cheryl Omeregie recalled the Christmas 2002 attack in which a patient stabbed a nurse in the hospital lobby while an ABC guard stood by. Omeregie herself had to knock the knife out of the patient's hand. The nurse had already been stabbed twice and probably would have been killed had Omeregie not stepped in, her colleagues say. When she asked the guard why he didn't intervene, he reportedly replied, "They don't pay me enough to get involved."

The guards were allegedly so ill-equipped for the circumstances that John George psychiatrist Harold Cottman wrote to hospital administrator Sandra Holliday last July and pleaded for armed, trained peace officers to patrol the two-building complex. "Let me assure you," he wrote. "Even the most psychotic patient understands the difference between a law enforcement officer with police power and a security guard, some of whom have criminal records."

Neither Cal-OSHA's recommendations nor Dr. Cottman's prodding convinced the administrators. The county health system faces a $25 million deficit this year, and bringing in sheriff's deputies would have cost additional tens of thousands of dollars annually. Ferguson says administrators considered doing it back in 2002 but gave up after the sheriff's department insisted that two officers, not one, be assigned to the hospital. The medical center couldn't afford the cost and the sheriff's department wouldn't budge. Two deputies were needed, sheriff's officials insisted, because the assignment was far too dangerous for a single officer.

John George is hardly the only psychiatric hospital that has to contend with combative patients. In fact, the statistics are staggering. The federal Occupational Safety and Health Administration reported last year that mental health workers were five times more likely to be the victims of nonfatal violent crime on the job than workers in any other occupation. In a 1998 report, Cal-OSHA warned that psychiatric workers "may be at a higher risk for injuries from assaults than the risk for injuries from all causes in the country's most hazardous industry."

The epidemic of assaults can be blamed in part on dwindling funding for outpatient mental health services. Outpatient clinics helped the severely mentally ill stay on their medications and acted as a kind of safety net. But as money dried up and clinics were shuttered, emergency admissions at psychiatric hospitals across the country increased dramatically. "About 50 percent of our patients are dually diagnosed," says Dr. Cottman. "They are bipolar or have schizophrenia along with drug and alcohol problems. Drugs are getting cheaper on the streets, and the ability of those drugs to alter the mental status of our patients has increased at the same time budgets of mental health services have been cut."

There's another reason for the increase in assaults, experts say, and that is the extent of civil rights protections afforded the severely mentally ill.

Once housed in psychiatric institutions that have all but disappeared over the last three decades, these patients were often the victims of psychiatric abuses. They were forcibly drugged, secluded, and restrained -- sometimes for days at a time. Some received lobotomies and electroshock therapy against their will. As a result, nearly every state has since enacted laws that greatly restrict how mental health workers can manage their out-of-control patients.

In California and many other states, a hospital may not forcibly medicate a patient or use restraints, unless there is an imminent threat to the patient or others. "Many people at the state level say a patient has to assault someone for it to qualify as an emergency," Mary Ferguson says. "They have to actually hit somebody."

California's Lanterman-Petris-Short Act mandated tough civil rights protections for the mentally ill back in the late '60s, and other states soon followed suit. Although the law has been on the books for three decades, the restrictions became increasingly problematic as patients

were released from institutions and outpatient services disappeared.

"We are trying to undo all the damage these civil rights groups have done," says E. Fuller Torrey, a psychiatrist and board president of the Treatment Advocacy Center, a Virginia-based nonprofit that aims to eliminate barriers to the timely treatment of severe mental illness. "The civil rights advocates and antipsychiatry groups, including the Scientologists, have made it extremely difficult to properly medicate or, when necessary, seclude highly disturbed patients in the hospital," he says.

Unfortunately, Torrey adds, "The people who have encouraged these changes usually have no experience themselves with people who are severely psychiatrically ill."

California still has some of the nation's strictest laws relating to treatment of the mentally ill. Helen Thomson, a former Davis assemblywoman who is now a Yolo County supervisor, sponsored legislation in the late '90s that would allow psychotic patients to be medicated through court-mandated outpatient services. But although former Governor Gray Davis finally signed it in 2002, no funding was attached, making the new law basically meaningless. "It's better for these people to be mandated to take their medication in an outpatient setting," Thomson says. "In New York, they've changed the laws and it's been very successful. A judge orders them to take their medication and they do."

There are additional civil rights protections that make working on a psych ward even tougher, according to John George administrator Ferguson. In particular, strict federal rules regarding the use of restraining devices have created enormous challenges for the county hospital. "Many of the [assault] problems we see began to happen in 2002 when the feds asked this hospital and every other hospital in the country to submit a plan to reduce restraints," Ferguson explains. "We saw a lot of problems around the organizational effort to decrease restraints."

With the few options mental health workers now face, Supervisor Thomson says it's all the more imperative that hospitals provide "lots of security and additional staffing" to protect employees from out-of-control patients.

San Francisco General Hospital's psychiatric ward, a publicly funded facility with a population comparable to that of John George, faced similar problems with patient assaults a few years back, but administrators there responded appropriately, says Gary Robinson, executive director of the Union of American Physicians and Dentists, which represents one hundred doctors employed by Alameda County. "SF General has not had the same kind of problems since," he says.

From interviews with staffers at SF General, it's clear the issue has long been a priority for hospital management. "We are quite vigilant with regard to violence in the workplace," says Sharon McCole Wicher, director of the hospital's behavioral health department. "We have an assault-and-battery review board comprised of managers and direct caregivers and we review all cases of assault on a regular basis and, as a result of this review, we make changes."

Everyone on the San Francisco unit, including the janitors, carries personal alarms that sound loudly when they are activated. Patients are searched before they are admitted, and sheriff's deputies patrol the entire hospital complex. Doctors are not allowed to conduct one-on-one exams with patients, and staff members are regularly trained in crisis management. "The risk is

always there, but our goal has to be to prevent assaults," says Dr. Mark Leary, the hospital's deputy chief of psychiatry.

A very different attitude prevailed at John George, according to union leader Robinson. "Alameda County and the medical center has had no interest in safety," he says bluntly. "The administrators just didn't want to hear it, and their plates were full."

Cal-OSHA is once again investigating the John George psychiatric hospital. This time, the inspectors aim to determine whether management had knowledge of safety and health violations that contributed to Dr. Ursua's death, but made no real attempt to correct them. "The question is whether any safety measures they implemented were sufficient enough to prevent violations that would lead to serious injury or death of any employee," Cal-OSHA's Fryer explains.

If the state agency concludes that administrators intentionally disregarded the hazards, it could issue a willful violation, which carries a $70,000 fine. Even then, John George's troubles are far from over. Two weeks ago, the federal Centers for Medicare and Medicaid Services did a surprise inspection, and found the hospital to be inadequate in four of the seven areas examined.

Although the details have not yet been made public, the federal inspectors typically look at staffing, patients' rights issues, and hospital governance. The feds gave John George officials ten days to submit a correction plan -- failure to fix the inadequacies could cost the hospital federal funding and accreditation.

Rene Pavon remains in custody of the county. She has been charged with murder by the Alameda County District Attorney's Office, to which she entered a plea of not guilty in late January.

Meanwhile, former trustee Robert Phillips hopes the bureaucrats in charge of staff safety will pay for their indifference. "I believe people directly responsible for failing to implement safety measures, which the board was promised were being implemented, should be fired," he says. "[Ursua's] murder was totally unnecessary."

Dr. Lene Martinez, an obstetrician and Ursua family friend, says the pain of Erlinda's death is only now beginning to sink in for Lorenzo. For several weeks afterward, he was surrounded by family and friends nearly every night, but lately the visitors have come by less frequently.

Lorenzo Ursua seems like a man who has willed himself to stay numb. He doesn't cry; he doesn't grandstand; he just answers questions and steers clear of emotions during a recent interview. As for the hospital administrators, he says only, "They didn't do their job, and I don't know how they should answer for that."

Mary Ferguson says that while she is deeply troubled by Dr. Ursua's murder, blame cannot be easily assigned. "You have to look at the whole environment. This didn't happen because someone didn't do their job," she says.

Things have changed at John George since November. Sheriff's deputies now patrol the hospital. Every staff member carries a personal alarm. And doctors may conduct exams only with a third person present in the room. It has all shaped up just the way nurse Stacey Johnson predicted: The employees would get everything they wanted once somebody got hurt really bad.

**SFGate**.com

## SAN LEANDRO
## County hospital penalized in doctor's slaying
### It must pay $54,000 in alleged killing by psychiatric patient

Henry K. Lee, Chronicle Staff Writer
Friday, May 14, 2004

The state has levied $54,000 in penalties against Alameda County's public psychiatric hospital for reported safety violations after a doctor was beaten and strangled to death last year.

California's Division of Occupational Safety and Health issued the citations Wednesday after investigating the death of Dr. Erlinda Ursua at John George Psychiatric Pavilion in San Leandro.

The facility was already the subject of separate safety-related penalties before the death of Ursua, 60, of Castro Valley, who was killed Nov. 19 in a private exam room by Rene Pavon, 48, authorities said. Pavon has pleaded not guilty to a charge of murder.

In a report sent to the hospital this week, Cal/OSHA found that the examination room was too isolated from other employees who could have been alerted in case of trouble.

"The exam room was behind locked doors and physically separated from the work areas where other employees were located," the report said. A "panic alarm" on the wall of the room was functional but too far away for Ursua to reach, officials concluded.

Hospital staff also failed to follow an unwritten policy that doctors were never to be left alone with "potentially violent patients," the report said.

Employees also failed to follow a policy that staff members were not supposed to wear scarves or jewelry, the report said. Ursua apparently wore a scarf that could have been used to strangle her, authorities said.

John George staff also failed to determine why Pavon was in possession of medical paperwork after she allegedly killed the doctor, the report said.

Jeff Raleigh, a spokesman for the Alameda County Medical Center, which runs John George, said Thursday that officials are discussing whether to appeal the penalties.

Raleigh said that the exam room where Ursua was killed is no longer used to examine patients and that doctors are always accompanied when examining patients.

"The changes were made prior to the citations," Raleigh said.

Ursua's family filed a wrongful-death lawsuit against the hospital last month, saying officials failed

to provide adequate security at the facility.

The lawsuit cited investigations of John George by Cal/OSHA in 1998 and last year in response to violent workplace assaults and complaints about substandard measures for preventing workers from getting hurt.

Those investigations resulted in five citations and $30,000 in proposed penalties for the hospital's failure to have an injury-prevention program in place and failing to report two nonfatal assaults on workers, one in December 2002 and the other in April 2003.

"They should have taken greater steps to ensure safety of the employees, and we didn't see that happening," Cal/OSHA spokesman Dean Fryer said Thursday. "They were forewarned by us."

*E-mail Henry K. Lee at hlee@sfchronicle.com.*

http://sfgate.com/cgi-bin/article.cgi?f=/c/a/2004/05/14/BAGFK6LK7I1.DTL

This article appeared on page **B - 1** of the San Francisco Chronicle

# The Daily Californian

Hospitals Risk Losing Funding
Alameda County Medical Center Working to Address Problems Identified by Health Services
BY Duni Heimpel and Nick Resnik
Contributing Writers
Tuesday, September 28, 2004

After a surprise inspection pointing out a spate of deficiencies in the county's medical system, the Alameda County Medical Center-already facing a $71 million budget deficit-may see potential cuts in millions of dollars of federal aid in less than two months.

Following the negative review by the California Department of Health Services Aug. 12, the Center for Medicare and Medicaid Services gave the medical center until Nov. 10 to file and implement a plan of compliance to alleviate the identified problems.

If drastic improvement is not found in each of the center's six facilities-Highland Hospital and Eastmont Wellness Center in Oakland, Fairmont Hospital and John George Psychiatric Pavillion in San Leandro, Winton Wellness Center in Hayward, and Newark Health Center in Newark-Medicare and Medicaid funding may be halted.

However, according to medical center spokesperson Mike Brown, the plan was filed last week, and has already been fully implemented. Now the state's health department must revisit the facilities to assess whether the plan has been put into action.

The review came in response to an inspection conducted earlier this year.

Following the murder of a physician by a patient and a suicide in the John George Psychiatric Pavilion in late 2003, the Center for Medicare and Medicaid Services commissioned a review of conditions at the John George facility in February.

During that review, John George was found to have deficiencies in governance, nursing, patients' rights and quality assurance.

The medical center immediately addressed problems at John George. During the surprise inspection on Aug. 12, conditions at the psychiatric facility were found to have improved dramatically.

Following the February findings, the center's Board of Trustees contracted Cambio Health Solutions, a Tennessee-based company specializing in helping troubled hospitals, to revamp the medical center's financial and personnel systems.

The company's actions have made hospital officials optimistic, as the medical center has been plagued with financial and managerial problems for a number of years. This is the first time in three years that the center has proposed a balanced budget.

The center, however, owes the county close to $200 million in unpaid loans.

Cambio's most difficult task is to stay under its allocated budget while maintaining the current quality of care and limiting layoffs, said Dr. Ted Rose, president of the medical center's Board of Trustees.

In order to balance the budget, the company recommends eliminating some 200 to 300 jobs-aiming to save up to $12.2 million in funds, which has riled up hospital staff.

Furthermore, Measure A funds-approved as a half-cent sales tax in March-will generate approximately $70 million to relieve the center's debt.

"Measure A is like the lifeblood given to a bleeding patient," Rose said.

Stipulations ensuring that the uninsured receive medical attention require the center to treat all patients-serving close to 10,000 uninsured Berkeley residents.

"Demand for services goes up every day," Rose said. "Every public hospital in the country is in serious financial trouble because of the rising level of uninsured people."

A correction to this article can be found here.

Contact Duni Heimpel and Nick Resnik at newsdesk@dailycal.org.

**LookSmart**

# FIND ARTICLES | 10,000,000 Articles

**Where To Look For What You Need.™**

FindArticles > Publications > Free > News & Society > Oakland Tribune > Jan 11, 2006 > Article

**FIND** John George psychiatric **IN** free and premium articles  **Advanced Search**

**Find Magazines by Topic**

▽ CLICK TO VIEW ▽    SAVE    PRINT    EMAIL    LINK

## Medical center cited for psych care - again

Oakland Tribune, Jan 11, 2006 by By Rebecca Vesely, STAFF WRITER

For the second time in less than two years, the Alameda County Medical Center is at risk of losing millions in federal funding because of serious patient care violations at its psychiatric hospital, according to documents obtained by the Oakland Tribune.

The latest investigation by state and federal licensing agencies was spurred by a patient suicide at John George Psychiatric Pavilion in San Leandro in September and reports of patient assaults and staffing problems.

Inspectors from the state Department of Health Services surveyed the 80-bed locked psychiatric hospital from Oct. 4 to Oct. 6 and found deficiencies in patients' rights and nursing services, according to a letter sent to hospital management on Dec. 29.

The 23-page survey report documents a harried staff ill-equipped to attend the needs of suicidal and agitated patients. The report also indicates a failure in management to adequately support the staff in caring for patients.

ADVERTISEMENT

Ads by Goo

**Original L HQ**
The Origin
magazine
Quality; Lc
Free
www.Originall

**Magazine Online**
Archived 8
from 300+
magazines
www.MyWire.

**NXTbook**
For Print to
Optimizatic
Publishers
www.nxtbook

**Today's H**
See Today
Headlines
Mean For
RevolutionHe

**Vancouve Mag**
Beautiful F
Magazine
colour, mo
www.ViewMa

The violations are being considered so severe that the federal Centers for Medicare and Medicaid Services, or CMS, is threatening to terminate its contract with the medical center, meaning that county's public hospital system would lose millions of dollars in reimbursements for Medicare and Medicaid patients, effectively shutting it down.

"We have further determined that these deficiencies, either individually or in combination, substantially limit the hospital's capacity to render adequate care to patients or are of such character as to adversely affect patient care and safety," Deborah Romero, CMS hospital and community care branch manager, wrote in the letter sent Dec. 29 to Wright Lassiter, CEO of the medical center.

"We are taking these results very seriously," Lassiter said in an interview Wednesday. The question of whether John George was adequately caring for patients came up after a patient suicide at the facility in September.

Police brought a 45-year-old San Leandro woman to John George on Aug. 30 on an involuntary hold because she was determined to be a danger to herself or others. She was released shortly after being admitted, but police brought her back to John George the next day, according to the county sheriff. This newspaper isn't naming the patient because of a general policy of not printing names of suicide victims.

Upon that second admission, the patient was diagnosed as being depressed and suicidal. She was prescribed antidepressants and staff was ordered to check on her every 15 minutes. Two days later, staff reported that the patient was talking about killing herself, saying she had nothing to live for and "no one would care if she were dead," according to the CMS survey report.

On Sept. 3, the patient told staff that she tried to hang herself in the bathroom. The attending physician ordered her level of observation raised to one-to-one, meaning that a staff member watched her constantly from behind a glass partition.

Over the next two days, the patient appeared to be improving and her level of observation was reduced to checks every 15 minutes and then checks every 30 minutes. Under hospital rules, 30-minute checks are warranted when a patient may still have a suicide plan but there's no immediate intent or recent suicide attempt.

However, a physician noted that day that the patient "feels she would still make an attempt in custody,

Conter
partr

Pro

On Sept. 9, a housekeeper found the patient in the women's bathroom. She had hanged herself with a piece of clothing wrapped around her neck and secured to a bathroom stall door. She was rushed to Eden Medical Center in Castro Valley, where the medical team determined she was brain dead. She was removed from life support three days later.

The state cited John George for violating this patient's rights by failing to provide a safe environment in which patients receive care.

Hospital officials said that appropriate care was given in this case, and that the woman was improving.

"We are comfortable that the level of care at that time was being met," medical center CEO Lassiter said.

The state surveyors also found problems in how the hospital addressed patient assaults. Surveyors reviewed hospital records of eight documented assaults by patients on other patients. They found that six of the eight patients were known to the hospital and had been assaultive in the past - one patient had been admitted to John George 197 previous times since 1997 and had a history of assaults. Complete and comprehensive assessments by physicians hadn't been done on four of the eight patients, and nurse assessments weren't done on two patients.

Bruce Waldo, administrator of John George, said that immediate action is taken when assaults occur and steps are in place to prevent assaults, even in instances of mere pushing or shoving.

"What we weren't good at was updating treatment plans," he said.

Staffing levels were often inadequate and violated a new state nurse staffing law, the surveyors wrote. A review of nurse staffing records for one week in September found a chronic shortage of nurses on 12 out of 14 shifts. Two other shifts had no staffing information, according to the report.

Ads by Google

# Software Activation

Software License Management Software solution to Stop Piracy

www.ProtectLicense.com

1 - 2 - 3 - Next

**Find Featured Titles for: News & Society**

▽     **CLICK TO VIEW**     ▽

**Find Research Guides for:**

▽     **CLICK TO VIEW**     ▽

**topix**

join the **topix** community today.sign up | sign in

## San Leandro, CA

San Leandro, CA ☐ News ■ Forum ■ Wire ■ Classifieds

Posted by Contra Costa Times Sep 21, 2006 | Permalink

# Sons of suicide victim sue Alameda County, claim negligence

Kimberly Dawn Rezendes told staff at the John George Psychiatric Pavilion in San Leandro that she planned to kill herself. She even told them how she was going to do it.

And when she had the opportunity, she kept her word. On Sept. 9, 2005 a custodian found her hanging by a towel in a bathroom at the hospital.

> *As soon as she was enough outside the line-of-sight protections, she committed suicide in the very manner she told them she would*

Kimberly Dawn Rezendes told staff at the John George Psychiatric Pavilion in San Leandro that she planned to kill herself. She even told them how she was going to do it.

And when she had the opportunity, she kept her word. On Sept. 9, 2005 a custodian found her hanging by a towel in a bathroom at the hospital.

> *As soon as she was enough outside the line-of-sight protections, she committed suicide in the very manner she told them she would*

- **Full story:** Available on Topix from Contra Costa Times, published *Sep 21, 2006*
- **Complete Coverage:** 1 more version of this story is available
- **Related Topics:** Suicide, Alameda County, CA

## COMMENTS

Showing posts 1 - 2 of 2

| **kit10** | Sep 21, 2006 | #1 | Flag | Reply » |
|---|---|---|

San Mateo, CA

patients in an acute psychiatric hospital cannot be treated with the same staffing ratios used in the medical hostital. in order for staff to be able to detect unsafe situations, registered nurses mmust be able to spend time with the patients, assessing their mental state. they are understaffed for this an are required to do mountains of paperwork. we used to say in nursing, "if you didn't document it, you didn't do it." now it's more like, "if you documented it all, you couldn't have done it because you would never have had the time to do it all."

i have been a psychiartic nurse for 30 years now and i will never understand why we have not learned what is needed to treat people with mental illness.

**d matthews**



JOINED: Mar 25, 2007
COMMENTS: 11

*costamesa berkeley*

*ISP Location: Santa Monica, CA*

Yesterday                                    #2 | Flag | Reply »

I HAVE SUFFERED MUCH HELL 7 YEARS HOMLESS I HAVE SEPCAIL DIET NEEDS VERY RESTRICITIVE I WAS DENIED CARE AT ALTA BATES FRO OPAIN TOO ACTUALLY DIAGNOES AS HOMLES SAYS ON THE PAPER.

AND RELEASED AFTER THREE ATEMPTS GE TIN TO ALTA NBABATES THEY REFUSE TO DO VOLUNTARY ON WEEKENDS ONLY 5150. NICE.

**Search**

This Topic

**Search wit**

**Faith, Hope and**
Looking For Cha
ChristiansSearch

**Volunteer Work**
Volunteer in Sri
rcdpnepal.org

**Income Opport**
Work at Home -
per Hour
www.Retire411.co

**Volunteer Ring**
Send this compli
RingRingMobile.c

**San Lea**
1. Oromo lan
2. Gas prices
3. Ex-TUD of
4. Legal ques
5. Car crash family
6. Psycholog
7. Meth, Cas Investigati
8. Newark ma Leandro c
9. Purse thef
10. Memorials

Vi

San Leandro



Solo Piano C

I HAD DIARAEHA WOULDNT LET ME BRING UIN CLEAN CLOTHES SOPA SO I KLEGFT STARVING FILTHY NO CARE AND TOLD ME SALMON WAS OK DIAREAHA BEFORE I GOT BACK TO CAR.

NOW MORE PROBLEMS CASUED BY PILING PON OF DENIEALS AND DISCIRM AND NO HELP
I CANT DO ANYTHING ABOUT IT GET HELP ELSEWHERE WIRTHER.I LIVE INMY CAR. WITH PHUIYICAL AND PSYCHE DISBLITY . NO ACCESSIBEL HOSUING AND I WILLOSE SECTION8 VOCHCER SOON.
THE LOCAL MENTALEHLTH HAD ME WAIT MO,MONTHS ON WAIT LIST THEN DENID .
BESIDES FUNDING CUTS CREATING HAVOC
SYTEM IS BROKEN AND NOT ONE COG IN IT WILL TAKE RESPONSIBILITY OR HELP.

Showing posts 1 - 2 of 2

Type in your comments to post to the forum

**Name**
(appears on your post)

**Comments**

Type the numbers you see in the image on the right:



[ **Post Comment** ]

Please note by clicking on "Post Comment" you acknowledge that you have read the Terms of Service and the comment you are posting is in compliance with such terms. **Be polite.** Inappropriate posts may be removed by the moderator.

## Other Recent San Leandro Threads

| Topic | Updated | Last By | Comments |
|---|---|---|---|
| Psychologist: Rhoades shouldn't die | Wed | d matthews | 1 |
| Meth, Cash, Vehicles Seized In Trafficking Inve... | Wed | d matthews | 1 |
| Newark man could get death penalty for killing ... | Wed | d matthews | 1 |
| Stop This Stupid War! | May 14 | Meadeboy | 1 |
| BEREAKING: Cop-killer found guilty | May 10 | snark | 1 |
| 2005 story on CVYSL embezzler-Julie Angelosante... | May 10 | Curious | 23 |
| Newark student stabs teen with screwdriver | May 10 | joyce palmo... | 1 |

Home Page | Forums | Most Popular | Top Stories | Local | US | World | Sports | Entertainment

About Us | Advertise | Contact Us | FAQ | Feedback | Forum | Jobs | Newsfeeds | Press Room | Privacy | Directory |

**Archives**

<<

| SUN | M( |
|---|---|
|  |  |
| 06 | 0 |
| 13 | 1 |

Less

1   **Douglas C. Fladseth** (Bar No. 083420)
    **LAW OFFICES OF DOUGLAS C. FLADSETH**
2   **50 Old Courthouse Square, Suite 600**
    **Santa Rosa, California 95404**
3   **Telephone: (707) 545-2600**
    **Facsimile: (707) 545-0552**
4
    **Attorney for Plaintiff**
5

6

7

8                    SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA

9                      NORTHERN DIVISION (UNLIMITED JURISDICTION)

10

11  LISA JOHNSON, by and through her       )   Case No.  RG05232747
    Conservator, Sharon Toth,              )
12                                         )
                                           )
13                    Plaintiff,           )   **[PROPOSED] ORDER GRANTING**
                                           )   **MOTION FOR LEAVE TO FILE**
14          vs.                            )   **AMENDED COMPLAINT**
                                           )
15  ALAMEDA COUNTY MEDICAL                 )   Reservation Number 715447
    CENTER, SCOTT ZELLER, M.D.,            )   Date: June 21, 2007
16  KURT BIEHL, M.D., JEANETTE             )   Time: 9:00 A.M.
    COTANCHE, R.N., LEONI ALFONSO,         )   Dept: 31
17  R.N., MADELYNE MARKLE, R.N.,           )
    CEDRICK FROWNER, DOES 1 to 50,         )
18  inclusive,                             )
                                           )
19                    Defendants.          )
                                           )
20

21          The motion of plaintiff for an order permitting the filing of a First Amended Complaint

22  came on regularly for hearing before this court on June 21, 2007.

23          After consideration of the moving papers, and opposition thereto, oral argument of the

24  parties and good cause appearing, the undersigned orders the following:

25          1.      Plaintiff's motion is granted.  The proposed First Amended Complaint shall be

26  deemed to be the amended pleading and be deemed filed and served as of the date this motion is

27

28          **[PROPOSED] ORDER GRANTING MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

1   granted.

2   **IT IS SO ORDERED.**

3   DATED: JUNE _____, 2007

_____
JUDGE OF THE SUPERIOR COURT

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28        **[PROPOSED] ORDER GRANTING MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

**PROOF OF SERVICE**

I, Ruby Bunting, am a citizen of the United States and employed in Sonoma County, California. I am over the age of 18 years and not a party to the within action. My business address is 50 Old Courthouse Square, Suite 600, Santa Rosa, California 95404. On this date I served the following:

**[PROPOSED] ORDER GRANTING MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

_X_   **BY OVERNIGHT MAIL** by depositing a true copy thereof at the Federal Express counter in Santa Rosa, California, in a postage paid envelope, addressed as set forth below:

___   **BY FAX** by transmitting a true copy thereof via facsimile to the person(s) set forth below:

___   **BY PERSONAL SERVICE** by personally delivering a true copy thereof to the person(s) at the address set forth below:

Gregory J. Rockwell
Boornazian, Jensen and Garthe
555 12th Street, Suite 1800
Oakland, CA 94604
    510-834-4350
    510-839-1897 fax
      Attorneys for Defendants Alameda County Medical Center, Zeller, Biehl, Cotanche, Alfonso and Markle

I certify and declare under penalty of perjury under the laws of the State of California, that the foregoing is true and correct.

Executed on May 22, 2007, at Santa Rosa, California.

*Ruby Bunting*
Ruby Bunting

## PROOF OF SERVICE

I, Ruby Bunting, am a citizen of the United States and employed in Sonoma County, California. I am over the age of 18 years and not a party to the within action. My business address is 50 Old Courthouse Square, Suite 600, Santa Rosa, California 95404. On this date I served the following:

**NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF DOUGLAS C. FLADSETH**

_X_    **BY OVERNIGHT MAIL** by depositing a true copy thereof at the Federal Express counter in Santa Rosa, California, in a postage paid envelope, addressed as set forth below:

___    **BY FAX** by transmitting a true copy thereof via facsimile to the person(s) set forth below:

___    **BY PERSONAL SERVICE** by personally delivering a true copy thereof to the person(s) at the address set forth below:

Gregory J. Rockwell
Boornazian, Jensen and Garthe
555 12th Street, Suite 1800
Oakland, CA 94604
        510-834-4350
        510-839-1897 fax
            Attorneys for Defendants Alameda County Medical Center, Zeller, Biehl, Cotanche, Alfonso and Markle

I certify and declare under penalty of perjury under the laws of the State of California, that the foregoing is true and correct.

Executed on May 22, 2007, at Santa Rosa, California.

Ruby Bunting

# EXHIBIT J

Law Offices of Douglas C Fladseth
Attn: Fladseth, Douglas C
50 Old Courthouse Square, Suite 600
Santa Rosa, CA  95404

Boornazian, Jensen & Garthe
Attn: Rockwell, Gregory J.
555 12th Street , Suite 1800
P.O. Box 12925
Oakland, CA  94604-2925

# Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

| | |
|---|---|
| Johnson | No. RG05232747 |
| Plaintiff/Petitioner(s) | |
| VS. | Order |
| | Motion to Amend Complaint |
| Alameda County Medical Center | Granted |
| Defendant/Respondent(s) | |
| (Abbreviated Title) | |

RECEIVED
JUN 2 5 2007
By_____

The Motion to Amend Complaint was set for hearing on 06/21/2007 at 09:00 AM in Department 31
before the Honorable Judith Ford.  The Tentative Ruling was published and has not been contested.

IT IS HEREBY ORDERED THAT:

The tentative ruling is affirmed as follows:  The unopposed Motion of Plaintiff Lisa Johnson for Leave
to File [Second] Amended Complaint is GRANTED.

The proposed First Amended Complaint submitted in connection with this motion shall be NOT be
deemed filed.  Plaintiff shall file and serve the Second Amended Complaint within five days.  Plaintiff
shall change the title of the Amended Complaint to include the phrase "Second Amended Complaint."
Plaintiff already filed a "First Amended Complaint" on November 1, 2005.

Plaintiff shall serve Notice of Entry of Order on Defendant.

Dated:  06/21/2007

_Judith A. Ford_
facsimile
Judge Judith Ford

Order

EXHIBIT J

Superior Court of California, County of Alameda
Rene C. Davidson Alameda County Courthouse

Case Number: RG05232747
Order After Hearing Re: of 06/21/2007

# DECLARATION OF SERVICE BY MAIL

I certify that I am not a party to this cause and that a true and correct copy of the foregoing document was mailed first class, postage prepaid, in a sealed envelope, addressed as shown on the foregoing document or on the attached, and that the mailing of the foregoing and execution of this certificate occurred at 201 13th Street, Oakland, California.

Executed on 06/21/2007.

Executive Officer / Clerk of the Superior Court

By  *Yvonne Baggett*

_____
Deputy Clerk

# EXHIBIT K

NYP

1   **Douglas C. Fladseth** (Bar No. 083420)
    **LAW OFFICES OF DOUGLAS C. FLADSETH**
2   **50 Old Courthouse Square, Suite 600**
    **Santa Rosa, California 95404**
3   **Telephone: (707) 545-2600**
    **Facsimile: (707) 545-0552**
4
    **Attorney for Plaintiff**
5
6
7
8              SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
9                  NORTHERN DIVISION (UNLIMITED JURISDICTION)
10

FILED
ALAMEDA COUNTY

JUN 2 6 2007

CLERK OF THE SUPERIOR COURT
By
                        Deputy

11   LISA JOHNSON, by and through her        )   Case No. RG05232747
     Conservator, Sharon Toth,              )
12                                          )   **SECOND AMENDED COMPLAINT FOR**
                       Plaintiff,           )   **DAMAGES**
13                                          )
             vs.                            )
14                                          )
     ALAMEDA COUNTY MEDICAL               )        **BY FAX**
15   CENTER, SCOTT ZELLER, M.D.,          )
     KURT BIEHL, M.D., JEANETTE           )
16   COTANCHE, R.N., LEONI ALFONSO,)
     R.N., MADELYNE MARKLE, R.N.,         )
17   CEDRICK FROWNER, DOES 1 to 50,        )
     inclusive,                            )
18                                          )
                       Defendants.         )
19   _____)

20        Plaintiff LISA JOHNSON alleges as follows:

21                **FACTS COMMON TO ALL CAUSES OF ACTION**

22        1.       Defendant CEDRICK FROWNER is an individual, and at all times herein

23   mentioned, is a resident of Alameda County, California.

24        2.       Defendant ALAMEDA COUNTY MEDICAL CENTER is, and at all time herein

25   mentioned, a public entity organized and existing under the laws of the State of California.

26        3.       Defendants DOE 1 through DOE 50, inclusive, are sued herein under fictitious

27   names. Their true names and capacities are unknown to Plaintiff. When their true names and

28                **SECOND AMENDED COMPLAINT FOR DAMAGES**

EXHIBIT K

1  capacities are ascertained, Plaintiff will amend this complaint by inserting their true names and

2  capacities of said defendants after they are ascertained. The plaintiff is informed and believes

3  that each fictitiously named defendant is responsible for the matters herein alleged.

4      4.    The plaintiff is informed and believes and thereon alleges that at all times herein

5  mentioned, each defendant, including all defendants sued under fictitious names, was the agent

6  and employee of each of the remaining defendants, and in doing the things hereinafter alleged,

7  was acting within the course and scope of this agency or employment.

8      5.    The plaintiff is informed and believes that on or about June 17, 2005 defendant

9  CEDRICK FROWNER was housed at the John George Psychiatric Pavilion pursuant to an

10  emergency psychiatric evaluation under the custody and control of defendants ALAMEDA

11  COUNTY MEDICAL CENTER, and DOES 1 to 50.

12      6.    The plaintiff is informed and believes that defendant CEDRICK FROWNER had

13  a history of prior brutality and criminal convictions and was known to defendants ALAMEDA

14  COUNTY MEDICAL CENTER, and DOES 1 to 50 as an individual prone to violent and

15  assaultive behavior.

16      7.    On or about June 17, 2005, at approximately 5:00 a.m., the plaintiff was housed at

17  the John George Psychiatric Pavilion pursuant to an emergency psychiatric evaluation under the

18  custody and control of defendants ALAMEDA COUNTY MEDICAL CENTER, and DOES 1 to

19  50.

20      8.    At said time and place, the defendants, ALAMEDA COUNTY MEDICAL

21  CENTER, and DOES 1 to 50, and each of them, negligently and carelessly failed to secure the

22  door to the plaintiff's room and negligently and carelessly failed to monitor and secure the

23  whereabouts of defendant CEDRICK FROWNER so that defendant CEDRICK FROWNER was

24  allowed access into the plaintiff's room.

25      9.    Once inside the plaintiff's room defendant CEDRICK FROWNER sexually

26  assaulted the sleeping plaintiff by putting his erect penis into the plaintiff's mouth. Once the

27  plaintiff was awake, he attempted to engage in genital intercourse with her.

28          **SECOND AMENDED COMPLAINT FOR DAMAGES**

1        10.    As a result of the acts of defendant CEDRICK FROWNER and the negligence

2   and carelessness of the defendant ALAMEDA COUNTY MEDICAL CENTER, and DOES 1 to

3   50, as alleged, the plaintiff suffered personal injury and severe emotional distress.

4        11.    On July 21, 2005, the plaintiff submitted a claim of damages to defendant

5   ALAMEDA COUNTY MEDICAL CENTER for the injuries alleged in this complaint.

6   Defendant ALAMEDA COUNTY MEDICAL CENTER rejected the plaintiff's claim of

7   damages by operation of law on September 2, 2005.

8        12.    On September 2, 2005, Sharon Toth, a principal in IMT Associates, was

9   appointed as Conservator of the plaintiff with the authority to bring this action on behalf of the

10   plaintiff.

11                          **FIRST CAUSE OF ACTION**

12                      **(Sexual Battery - Civil Code §1708.5)**

13        13.    The plaintiff refers to and incorporates herein by reference paragraphs 1 through

14   12, above.

15        14.    The above conduct by defendant CEDRICK FROWNER is a violation of Civil

16   Code §1708.5 in that CEDRICK FROWNER acted with the intent to cause a harmful or

17   offensive contact by the use of his intimate part and a sexually offensive contact with the plaintiff

18   directly occurred.  Defendant CEDRICK FROWNER's conduct also caused the plaintiff to suffer

19   imminent apprehension of such a contact occurring.

20        15.    At no time did the plaintiff consent to any of the acts of defendant CEDRICK

21   FROWNER alleged in paragraph 9, above.

22        WHEREFORE, Plaintiff requests relief as hereinafter provided.

23                         **SECOND CAUSE OF ACTION**

24                                **(Assault)**

25        16.    The plaintiff refers to and incorporates herein by reference paragraphs 1 through

26   15 above.

27        17.    In doing the acts as alleged above, defendant CEDRICK FROWNER intended to

28                      **SECOND AMENDED COMPLAINT FOR DAMAGES**

3

1 | cause or to place the plaintiff in apprehension of a harmful or offensive contact with her person.

2 |     18.    As a result of defendant CEDRICK FROWNER's acts as alleged above, the

3 | plaintiff, in fact, was placed in great apprehension of a harmful or offensive contact with her

4 | person.

5 |     WHEREFORE, Plaintiff requests relief as hereinafter provided.

6 | **THIRD CAUSE OF ACTION**

7 | **(Intentional Infliction of Emotional Distress)**

8 |     19.    The plaintiff refers to and incorporates herein by reference paragraphs 1 through

9 | 18 above.

10 |     20.    Defendant CEDRICK FROWNER's conduct was intentional, outrageous,

11 | malicious and done with ill will and with the intent of causing the plaintiff to suffer humiliating

12 | mental anguish, and emotional and physical distress.

13 |     21.    Defendant CEDRICK FROWNER's conduct was so severe and outrageous that as

14 | a proximate result Plaintiff suffered humiliation, mental anguish and emotional and physical

15 | distress.

16 |     WHEREFORE, Plaintiff requests relief as hereinafter provided.

17 | **FOURTH CAUSE OF ACTION**

18 | **(Negligence)**

19 |     22.    The plaintiff refers to and incorporates herein by reference paragraphs 1 through

20 | 21 above.

21 |     23.    Defendants ALAMEDA COUNTY MEDICAL CENTER and DOES 1 to 50

22 | owed a duty to plaintiff to provide secure facilities so that the plaintiff would not be subject to

23 | harm from other patients.  The defendants and each of them carelessly and negligently breached

24 | their duty to the plaintiff by allowing defendant CEDRICK FROWNER access to the plaintiff's

25 | room while she slept and by allowing defendant CEDRICK FROWNER to engage in the conduct

26 | alleged in paragraph 9, above.

27 |     24.    As a result of the carelessness and negligence of the defendants ALAMEDA

28 |

**SECOND AMENDED COMPLAINT FOR DAMAGES**

4

1    COUNTY MEDICAL CENTER and DOES 1 to 50 the plaintiff suffered injuries and damages as

2    alleged herein.

3         WHEREFORE, Plaintiff requests relief as hereinafter provided.

4                           **FIFTH CAUSE OF ACTION**

5                            **(Respondeat Superior)**

6         25.    The plaintiff refers to and incorporates herein by reference paragraphs 1 through

7    24 above.

8         26.    At all times herein mentioned, defendant DOES 1 to 50 were the agents and

9    employees of defendant ALAMEDA COUNTY MEDICAL CENTER and, in doing the acts

10   herein described and referred to, were acting in the course and within the scope of their authority

11   as agents and employees, and in the transaction of the business of the ALAMEDA COUNTY

12   MEDICAL CENTER.  Defendant ALAMEDA COUNTY MEDICAL CENTER is therefore

13   liable to the plaintiff for the acts of defendants DOES 1 through 50 as heretofore alleged.

14        WHEREFORE, Plaintiff requests relief as hereinafter provided.

15                          **SIXTH CAUSE OF ACTION**

16      **(Employer's Negligent Hiring, Training, and/or Retention of Unfit Employee)**

17        27.    The plaintiff refers to and incorporates herein by reference paragraphs 1 through

18   26, above.

19        28.    The plaintiff is informed and believes, and based on that information and belief,

20   alleges that defendant ALAMEDA COUNTY MEDICAL CENTER knew, or in the exercise of

21   reasonable care, should have known that DOES 1 to 50 were incompetent and unfit to perform

22   the job duties that they were hired to perform, and that the failure to perform these job duties

23   involved the risk of harm to others such as the plaintiff.

24        . 29.    Defendant ALAMEDA COUNTY MEDICAL CENTER knew, or should have

25   known, that defendant DOES 1 to 50 were unfit to supervise, protect and prevent harm and

26   violence to those persons similarly situated as plaintiff.

27        30.    The negligence of the defendants, and each of them, was the proximate cause of

28                        **SECOND AMENDED COMPLAINT FOR DAMAGES**

                                           5

1    the plaintiff's injuries.

2        WHEREFORE, Plaintiff requests relief as hereinafter provided.

3    **SEVENTH CAUSE OF ACTION**

4    **(Civil Rights Violation Pursuant to 42 UCSA §1983)**

5        31.   The plaintiff refers to and incorporates herein by reference paragraphs 1 through

6    30, above.

7        32.   Plaintiff possessed a constitutional right of which she was deprived.  Plaintiff

8    was forcibly taken into custody on a 72-hour hold pursuant to Code section 5150, housed at the

9    John George Psychiatric Pavilion and was under the exclusive and involuntary care, custody and

10   control of ALAMEDA COUNTY MEDICAL CENTER.  Plaintiff has a constitutional right to be

11   reasonably protected and to be safe under such circumstances.  A patient with a history known to

12   defendants as a violent sexual predator was allowed to sexually assault plaintiff.  The defendant,

13   ALAMEDA COUNTY MEDICAL CENTER, failed to provide for plaintiff's reasonable safety

14   thereby denying and depriving her of her constitutional rights.

15       33.   ALAMEDA COUNTY MEDICAL CENTER showed "deliberate indifference" to

16   plaintiff's rights.  ALAMEDA COUNTY MEDICAL CENTER knew, or should have known,

17   that defendant CEDRICK FROWNER had a violent history.  ALAMEDA COUNTY MEDICAL

18   CENTER has a repeated history of assault and death to staff and patients.  As such, they are on

19   notice of the need to provide particular safeguard to patients, especially to threatened patients

20   such as plaintiff.  ALAMEDA COUNTY MEDICAL CENTER had been repeatedly advised by

21   state regulatory agencies (CAL-OSHA) that their security measures are inadequate and place the

22   staff and patients at undue risk due to the inadequacy of security and lack of proper training of

23   the security guards.

24       34.   ALAMEDA COUNTY MEDICAL CENTER's failure to provide adequate safety

25   measures lead to the violent assault upon plaintiff in a violation of her right to safety and

26   deprivation of her constitutional rights to not be deprived of her life, liberty and property without

27   due process of law.  ALAMEDA COUNTY MEDICAL CENTER created the damages to

28   

**SECOND AMENDED COMPLAINT FOR DAMAGES**

6

1  plaintiff by forcibly holding her against her will and by subjecting her to unreasonable risks and
2  specific threats of danger without adequate and reasonable safeguards and protection against
3  known serious threats to her life and well being.

### PRAYER

5  WHEREFORE Plaintiff prays for judgment against defendants and each of them as
6  follows:

7  1.    Medical, hospital and related health care bills, according to proof;

8  2.    Loss of earnings;

9  3.    General damages;

10  4.    Punitive damages;

11  5.    For prejudgment and post judgment interest;

12  6.    Costs of suit herein incurred;

13  7.    For any other relief that is just and proper.

15  DATED: June 25, 2007                    LAW OFFICE OF DOUG C. FLADSETH

17
18                                          DOUGLAS C. FLADSETH
                                            Attorney for Plaintiff

**SECOND AMENDED COMPLAINT FOR DAMAGES**

1

**PROOF OF SERVICE**

2        I, Ruby Bunting, am a citizen of the United States and employed in Sonoma County,

3    California. I am over the age of 18 years and not a party to the within action. My business

4    address is 50 Old Courthouse Square, Suite 600, Santa Rosa, California 95404. On this date I

5    served the following:

6

**SECOND AMENDED COMPLAINT FOR DAMAGES**

7

8    _X_    **BY USPS MAIL** by depositing a true copy thereof in a USPS mailbox in Santa Rosa,
           California, in a postage paid envelope, addressed as set forth below:

9

10   ___    **BY FAX** by transmitting a true copy thereof via facsimile to the person(s) set forth
           below:

11   ___    **BY PERSONAL SERVICE** by personally delivering a true copy thereof to the person(s)
           at the address set forth below:

12
       Gregory J. Rockwell

13     Boornazian, Jensen and Garthe
       555 12th Street, Suite 1800

14     Oakland, CA 94604
              510-834-4350

15            510-839-1897 fax
                     Attorneys for Defendants Alameda County Medical Center, Zeller, Biehl,

16                   Cotanche, Alfonso and Markle

17

18        I certify and declare under penalty of perjury under the laws of the State of California, that
     the foregoing is true and correct.

19        Executed on June 26, 2007, at Santa Rosa, California.

20                                        _Ruby Bunting_

21                                        Ruby Bunting

22

23

24

25

26

27

28

# EXHIBIT L

GREGORY J. ROCKWELL, ESQ. (SBN 67305)
JILL P. SAZAMA, ESQ. (SBN 214215)
BOORNAZIAN, JENSEN & GARTHE
A Professional Corporation/File #24266
555 12th Street, Suite 1800
P. O. Box 12925
Oakland, CA 94604-2925
Telephone: (510) 834-4350
Facsimile: (510) 839-1897

**ENDORSED**
**FILED**
ALAMEDA COUNTY

JUN 2 8 2007

CLERK OF THE SUPERIOR COURT
BY YASMIN SINGH, Deputy

Attorneys for Defendants
ALAMEDA COUNTY MEDICAL CENTER,
SCOTT ZELLER, M.D., KURT BIEHL, M.D.,
JEANETTE COTANCHE, R.N., LEONI ALFONSO, R.N.,
MADELYNE MARKLE, R.N.

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF ALAMEDA (NORTHERN DIVISION)

| | |
|---|---|
| LISA JOHNSON, by and through her Conservator, Sharon Toth,<br><br>Plaintiff,<br><br>vs.<br><br>ALAMEDA COUNTY MEDICAL CENTER, SCOTT ZELLER, M.D., KURT BIEHL, M.D., JEANETTE COTANCHE, R.N., LEONI ALFONSO, R.N., MADELYNE MARKLE, R.N., CEDRICK FROWNER, et al.,<br><br>Defendants. | ) Case No.: RG05232747<br>)<br>) **ANSWER TO SECOND AMENDED**<br>) **COMPLAINT FOR DAMAGES OF**<br>) **DEFENDANTS ALAMEDA COUNTY**<br>) **MEDICAL CENTER, SCOTT ZELLER,**<br>) **M.D., KURT BIEHL, M.D., JEANETTE**<br>) **COTANCHE, R.N., LEONI ALFONSO,**<br>) **R.N. and MADELYNE MARKLE, R.N.**<br>)<br>) Complaint Filed: 9/15/05<br>) First Amended Complaint Filed: 11/2/05<br>) Second Amended Complaint Filed: 6/26/07 |

**COME NOW** defendants ALAMEDA COUNTY MEDICAL CENTER, SCOTT ZELLER, M.D., KURT BIEHL, M.D., JEANETTE COTANCHE, R.N., LEONI ALFONSO, R.N. and MADELYNE MARKLE, R.N., and for their answer to the unverified second amended complaint of plaintiff on file herein, admit, deny and allege as follows:

Under the provisions of §431.30(d) of the California Code of Civil Procedure, theses answering defendants deny each and every, all and singular, generally and specifically, the allegations contained in said complaint, and further deny that plaintiff has been damaged in any sum or sums, or at all, by reason of any act or omission on the part of these answering defendants.

**AS A FIRST, SEPARATE AND DISTINCT AFFIRMATIVE DEFENSE TO THE**

-1-

ANSWER TO SECOND AMENDED COMPLAINT;
*Lisa Johnson v. Alameda County Medical Center, et al.,* Alameda Sup. #RG05232747        **EXHIBIT L**

1  **UNVERIFIED COMPLAINT ON FILE HEREIN, AND TO EACH CAUSE OF ACTION**

2  **THEREOF**, these answering defendants are informed and believe and thereon allege that plaintiff

3  was herself careless and negligent in and about the matters alleged in the complaint, and that said

4  carelessness and negligence on plaintiff's own part proximately contributed to the happening of

5  the incident and to the injuries, loss and damages complained of, if any there were, and said

6  negligence shall diminish plaintiff's recovery herein in direct proportion to the extent of such

7  negligence under the doctrine of comparative negligence.

8      **AS A SECOND, SEPARATE AND DISTINCT AFFIRMATIVE DEFENSE TO THE**

9  **UNVERIFIED COMPLAINT ON FILE HEREIN, AND TO EACH CAUSE OF ACTION**

10  **THEREOF**, these answering defendants are informed and believe and thereon allege that, prior to

11  and at the time of the occurrence of the alleged incident which is the subject of plaintiff's

12  complaint, plaintiff had knowledge, express or implied, of those matters alleged in the complaint;

13  that plaintiff did with the above-mentioned knowledge voluntarily and of her own free will place

14  herself in an unsafe and dangerous position, and by reason thereof said plaintiff assumed the risk

15  and all risks ordinarily incident thereto; and said assumption of risk bars recovery herein.

16      **AS A THIRD, SEPARATE AND DISTINCT AFFIRMATIVE DEFENSE TO THE**

17  **UNVERIFIED COMPLAINT ON FILE HEREIN, AND TO EACH CAUSE OF ACTION**

18  **THEREOF**, these answering defendants are informed and believe and thereon allege that plaintiff

19  failed to timely comply with the claim presentation requirements of the California Government

20  Code and/or failed to file said complaint within the time delineated by all applicable statutes of

21  limitations, including, but not limited to Code of Civil Procedure §340.5 and Government Code

22  §945.6.

23      **AS A FOURTH, SEPARATE AND DISTINCT AFFIRMATIVE DEFENSE TO THE**

24  **UNVERIFIED COMPLAINT ON FILE HEREIN, AND TO EACH CAUSE OF ACTION**

25  **THEREOF**, these answering defendants are informed and believe and thereon allege that

26  plaintiff's unverified complaint is barred by all governmental immunities, including, but not

27  limited to, Government Code §§815.2, 820.2, 830.6, 835.4, 840.6, 854.8, 855.4, 855.6 855.8, 856

28

-2-

ANSWER TO SECOND AMENDED COMPLAINT;
*Lisa Johnson v. Alameda County Medical Center, et al.,* Alameda Sup. #RG05232747

1 and 856.4.

2    AS A FIFTH, SEPARATE AND DISTINCT AFFIRMATIVE DEFENSE TO THE

3 UNVERIFIED COMPLAINT ON FILE HEREIN, AND TO EACH CAUSE OF ACTION

4 THEREOF, these answering defendants are informed and believe and thereon allege that neither

5 the complaint nor any of its alleged causes of action state facts sufficient to constitute a cause of

6 action against these answering defendants.

7    AS A SIXTH, SEPARATE AND DISTINCT AFFIRMATIVE DEFENSE TO THE

8 UNVERIFIED COMPLAINT ON FILE HEREIN, AND TO EACH CAUSE OF ACTION

9 THEREOF, these answering defendants are informed and believe and thereon allege that, prior to

10 and at the time of the medical treatment referred to in the plaintiff's complaint, plaintiff was fully

11 informed about and aware of all risks and potential complications associated with said treatment,

12 including all risks and potential complications associated with medications, transfusion of blood

13 products, grafting of tissue, surgical procedures and all other phases and aspects of said medical

14 treatment, and with said information and knowledge, did knowingly, voluntarily and willingly

15 consent and agree to said medical treatment.

16    AS A SEVENTH, SEPARATE AND DISTINCT AFFIRMATIVE DEFENSE TO

17 THE UNVERIFIED COMPLAINT ON FILE HEREIN, AND TO EACH CAUSE OF

18 ACTION THEREOF, these answering defendants are informed and believe and thereon allege

19 that all procedures performed by defendants were reasonable and necessary to the plaintiff's health

20 and well-being, and were all properly performed.

21    AS AN EIGHTH, SEPARATE AND DISTINCT AFFIRMATIVE DEFENSE TO

22 THE UNVERIFIED COMPLAINT ON FILE HEREIN, AND TO EACH CAUSE OF

23 ACTION THEREOF, these answering defendants are informed and believe and thereon allege

24 that in the event these answering defendants are found to be liable (which supposition is denied

25 and merely stated for the purpose of the affirmative defense), at the time of trial of this matter said

26 defendants may elect to introduce evidence of any amounts paid or payable, if any, as a benefit to

27 plaintiff pursuant to Civil Code §3333.1.

28

-3-

ANSWER TO SECOND AMENDED COMPLAINT;
*Lisa Johnson v. Alameda County Medical Center, et al.,* Alameda Sup. #RG05232747

1    **AS A NINTH, SEPARATE AND DISTINCT AFFIRMATIVE DEFENSE TO THE**

2    **UNVERIFIED COMPLAINT ON FILE HEREIN, AND TO EACH CAUSE OF ACTION**

3    **THEREOF**, these answering defendants are informed and believes and thereon allege that in the

4    event these answering defendants are found to be liable (which supposition is denied and merely

5    stated for the purpose of this affirmative defense), the damages for non-economic losses shall not

6    exceed the amount specified in Civil Code §3333.2.

7    **AS A TENTH, SEPARATE AND DISTINCT AFFIRMATIVE DEFENSE TO THE**

8    **UNVERIFIED COMPLAINT ON FILE HEREIN, AND TO EACH CAUSE OF ACTION**

9    **THEREOF**, these answering defendants are informed and believe and thereon allege that in the

10   event these answering defendants are found to be liable (which supposition is denied and merely

11   stated for the purpose of this affirmative defense), these defendants may elect to have future

12   damages, if in excess of the amount specified in Code of Procedure §667.7, paid periodically in

13   whole or in part, as specified in Code of Civil Procedure §667.7.

14   **AS AN ELEVENTH, SEPARATE AND DISTINCT AFFIRMATIVE DEFENSE TO**

15   **THE UNVERIFIED COMPLAINT ON FILE HEREIN, AND TO EACH CAUSE OF**

16   **ACTION THEREOF**, these answering defendants are informed and believe and thereon allege

17   that, the injuries, losses and damages, if any there were, allegedly sustained by plaintiff were

18   proximately caused by the conduct of other persons or entities who are not the agents of these

19   defendants, and by reason thereof, any liability of defendants herein shall be diminished, offset or

20   abated by reason of said conduct.

21   **AS A TWELFTH, SEPARATE AND DISTINCT AFFIRMATIVE DEFENSE TO**

22   **THE UNVERIFIED COMPLAINT ON FILE HEREIN, AND TO EACH CAUSE OF**

23   **ACTION THEREOF**, these answering defendants are informed and believe and thereon allege

24   that they are immune from liability and plaintiff's claim is barred by the doctrine of qualified

25   immunity.

26   **AS A THIRTEENTH, SEPARATE AND DISTINCT AFFIRMATIVE DEFENSE TO**

27   **THE UNVERIFIED COMPLAINT ON FILE HEREIN, AND TO EACH CAUSE OF**

28

-4-

ANSWER TO SECOND AMENDED COMPLAINT;
*Lisa Johnson v. Alameda County Medical Center, et al.,* Alameda Sup. #RG05232747

1 | ACTION THEREOF, these answering defendants are informed and believe and thereon allege

2 | that they are immune from liability and plaintiff's claim is barred by the provisions of California

3 | Welfare & Institutions Code §§5000-5371.

4 |       **AS A FOURTEENTH, SEPARATE AND DISTINCT AFFIRMATIVE DEFENSE**

5 | **TO THE UNVERIFIED COMPLAINT ON FILE HEREIN, AND TO EACH CAUSE OF**

6 | **ACTION THEREOF,** these answering defendants are informed and believe and thereon allege

7 | that plaintiff's complaint fails to state claim upon which relief can be granted.

8 |       **AS A FIFTEENTH, SEPARATE AND DISTINCT AFFIRMATIVE DEFENSE TO**

9 | **THE UNVERIFIED COMPLAINT ON FILE HEREIN, AND TO EACH CAUSE OF**

10 | **ACTION THEREOF,** these answering defendants allege that plaintiff's claims are barred by the

11 | doctrine of qualified immunity.

12 |       **AS A SIXTEENTH, SEPARATE AND DISTINCT AFFIRMATIVE DEFENSE TO**

13 | **THE UNVERIFIED COMPLAINT ON FILE HEREIN, AND TO EACH CAUSE OF**

14 | **ACTION THEREOF,** these answering defendants allege that plaintiff's claims are barred by the

15 | applicable statutes of limitations, including, but not limited to Code of Civil Procedure §335.1

16 |       **WHEREFORE,** these answering defendants pray as follows:

17 |    1.    That plaintiff take nothing by way of her complaint and that these answering

18 |         defendants be dismissed hence;

19 |    2.    For reasonable attorneys' fees;

20 |    3.    For costs of suit incurred herein; and

21 |    4.    For such other and further relief as the Court deems just and proper.

22 | DATED:   June 28, 2007

23 |                           BOORNAZIAN, JENSEN & GARTHE

24 |                           By: _____

25 |                             JILL P. SAZAMA, ESQ.

26 |                           Attorneys for Defendants
                          ALAMEDA COUNTY MEDICAL

27 |                           CENTER, ZELLER, BIEHL,
                          COTANCHE, ALFONSO and

28 |                           MARKLE

-5-

ANSWER TO SECOND AMENDED COMPLAINT;
*Lisa Johnson v. Alameda County Medical Center, et al.,* Alameda Sup. #RG05232747

## PROOF OF SERVICE BY MAIL
### (C.C.P. SECTIONS 1013(a) -2015.5)

I am employed in the County of Alameda, State of California. I am over the age of 18 years and not a party to the within action. My business address is 555 12th Street, Suite 1800, P. O. Box 12925, Oakland, California 94604-2925.

I am readily familiar with the business practice for collection and processing of correspondence for mailing with the United States Postal Service. On the date indicated below, at the above-referenced business location, I sealed envelopes, enclosing a copy of the **ANSWER TO SECOND AMENDED COMPLAINT FOR DAMAGES OF DEFENDANTS ALAMEDA COUNTY MEDICAL CENTER, SCOTT ZELLER, M.D., KURT BIEHL, M.D., JEANETTE COTANCHE, R.N., LEONI ALFONSO, R.N. and MADELYNE MARKLE, R.N.**, addressed as shown below, and placed them for collection and mailing following ordinary business practices to be deposited with the United States Postal Service on the date indicated below:

Douglas C. Fladseth, Esq.          **Attorneys for Plaintiff LISA JOHNSON**
Law Offices of Douglas C. Fladseth
50 Old Courthouse Square, Suite 600
Santa Rosa, CA 95404
Tel: (707) 545-2600
Fax: (707) 545-0552
e-mail: www.fladseth@aol.com

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed at Oakland, California, on June 28, 2007.

_Candace H_
Candace Hankins

24266\408313

-6-

ANSWER TO SECOND AMENDED COMPLAINT;
*Lisa Johnson v. Alameda County Medical Center, et al.*, Alameda Sup. #RG05232747