1

2

3

4

5                IN THE UNITED STATES DISTRICT COURT

6            FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8  LISA JOHNSON, by and through her          No. C 07-3395 CW
   Conservator, Sharon Toth,
9                                            ORDER GRANTING IN PART
           Plaintiff,                        AND DENYING IN PART
10                                           DEFENDANTS' MOTION FOR
       v.                                    SUMMARY JUDGMENT AND
11                                           REMANDING TO STATE
   ALAMEDA COUNTY MEDICAL CENTER; SCOTT      COURT
12 ZELLER, M.D.; KURT BIEHL, M.D.;
   JEANETTE COTANCHE, R.N.; LEONI
13 ALFONSO, R.N.; MADELYNE MARKLE, R.N.;
   AND CEDRICK FROWNER,
14
           Defendants
15
   _____/
16

17     Defendants Alameda County Medical Center (ACMC), Scott Zeller,

18 M.D., Kurt Biehl, M.D., Jeanette Cotanche, R.N., Leoni Alfonso,

19 R.N. and Madelyne Markle, R.N. move for summary judgment or, in the

20 alternative, for partial summary judgment on any or all of

21 Plaintiff Lisa Johnson's claims against them.[1]  Plaintiff opposes

22 the motion.  The matter was heard on June 25, 2009.  Having

23 considered oral argument and all of the parties' papers, the Court

24 grants the motion in part and denies it in part.[2]

25 _____

26     [1]Plaintiff has not served Defendant Cedrick Frowner with the
   summons and complaint.
27
       [2]Defendants also filed a motion for judgment on the pleadings.
28 This motion is subsumed in the motion for summary judgment and is
   denied as moot.

United States District Court
For the Northern District of California

BACKGROUND

Plaintiff was admitted to John George Psychiatric Pavilion (JGPP), operated by ACMC, on June 16, 2005, after having been detained by the Hayward Police Department because it was believed that she was a danger to herself and/or gravely disturbed due to a mental disorder.  Zeller Dec. at 2.  Plaintiff was held involuntarily at JGPP pursuant to California Welfare and Institutions Code § 5150.

Plaintiff has submitted a declaration stating that she complained to an unspecified JGPP employee that another detainee was leering at her and that she felt threatened, but that no actions were taken to protect her.  Pl.'s Dec. at 1.  Plaintiff states that she was later sedated and was supposed to be locked in a secluded room for the night.  Id.  According to Defendants, Plaintiff was taken to a seclusion room equipped with a lock that was supposed to prevent others from entering without a key.  Zeller Dec. at 2.  However, Plaintiff states that, during the night, another patient, Cedric Frowner, gained entry to her room and raped her.

The Alameda County Sheriff's Report on the incident states that Frowner, who was also being involuntarily held at JGPP pursuant to an emergency psychiatric hold, was assigned to room 14 and Plaintiff was assigned to room 13.  Pl.'s Ex. 2.  Although Plaintiff's declaration does not contain any further information, the Sheriff's Report states that, at 5:00 am on June 17, Plaintiff was asleep in her room and woke up with Frowner's erect penis inside her mouth.  Plaintiff attempted to move her face away, and Frowner continued to attempt to insert his penis into her mouth.

United States District Court
For the Northern District of California

Plaintiff became entangled in her bedding as she tried to move off of the bed.  She began screaming as she ran around the bed.  Frowner blocked Plaintiff so that she could not exit the room, and pulled his pants lower.  Staff members then entered the room and physically removed Frowner.

The Sheriff's Report states that the locking mechanism on Plaintiff's door was determined to be faulty.  Plaintiff's door appeared to be locked, but the bolt did not catch.  According to the Sheriff's report, a security guard observed Frowner pull on several locked doors before he pulled on Plaintiff's door and was able to enter her room.  The security guard notified the nurse's station of the incident, at which point they entered Plaintiff's room, heard her screaming, and saw Frowner standing with his exposed penis within one inch of her face.

The charge nurse on duty for the night shift of June 16 and 17 states that she, the security guard and three other staff members responded to Plaintiff's room when someone called out that a patient had entered another patient's room.  McIntyre Dec. at 3.  She states:

> Following the incident, other staff members and I were puzzled as to how the male patient was able to get into the plaintiff's room, as the door was equipped with a lock that was in the locked position, which should have precluded anyone from opening the door without a key. We subsequently determined that there was a malfunction of the lock's latching mechanism, which made it appear to be secured, but it could still be opened by pulling on the door.  Prior to the incident involving the plaintiff, I was unaware of any problem with the latching mechanism on the door to the room in which the plaintiff was sleeping, and I know of no employee of ACMC who was aware of any such problem.

Id.

According to a report written by the Licensing and

3

**United States District Court**
For the Northern District of California

Certification Program (L&C) within the California Department of Health Services, on June 20 and 23, 2005 L&C made unannounced visits to JGPP to investigate Plaintiff's complaint concerning patient care and services.  Pl.'s Ex. 1.  On September 12, 2005, L&C sent a letter to Plaintiff stating that it had "investigated [the] circumstances surrounding your complaint through direct observation, interviews, and/or review of documents.  Through this process we have substantiated your complaint."  Id.  The report completed by L&C listed several deficiencies in violation of the California Code of Regulations, finding that: "The hospital failed to ensure that [Plaintiff] received care in the hospital in a safe environment"; "The hospital failed to ensure that documentation in the medical record was accurate and reflected the exact circumstances.  A late entry did not record the date and time of the entry and/or when the circumstances documented occurred"; and "The hospital failed to ensure that the locking system on the door of [the] seclusion room was working properly."  Id.

Plaintiff first sued Frowner, along with ACMC and the individual Defendants, in state court.  The case was subsequently removed after Plaintiff added a federal claim for the first time in the second amended complaint.

The second amended complaint asserts claims against ACMC for negligence and negligent hiring, retention and training.[3]  It also asserts a claim against ACMC under 42 U.S.C. § 1983 for constitutional violations.  Although the complaint does not specify

---

[3]The complaint also purports to assert a claim for "respondeat superior."  Respondeat superior, however, is a theory of liability by which ACMC may be held liable for the negligent actions of its employees, not an independent cause of action.

which constitutional provisions were allegedly violated, the claim is premised on ACMC's failure to provide adequate security, which enabled Frowner to assault Plaintiff.  This is most consonant with a claim for infringement of her right to substantive due process under the Fourteenth Amendment.  Although the complaint lists the individual Defendants in the caption, they are not mentioned anywhere in the body of the complaint.  Nonetheless, Plaintiff has affirmed that she intends to assert claims for negligence and due process violations against the individual Defendants.  For the purposes of this motion, the Court will therefore construe the complaint as asserting such claims.[4]

The matter was heard on June 25, 2009.  In spite of being given several additional opportunities to point to actual evidence of wrongdoing specific to each individual Defendant and to a policy on the part of ACMC which could support a civil rights claim, or to show how additional discovery could enable her to do so, Plaintiff did not present any evidence to preclude summary adjudication against her on all of her federal claims.

LEGAL STANDARD

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law.  Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir.

---

[4]Because the Court concludes that Plaintiff's federal claims against the individual Defendants fail, her request to amend the complaint to clarify that she intends to assert such claims is denied as moot.

United States District Court
For the Northern District of California

1987).

The moving party bears the burden of showing that there is no material factual dispute.  Therefore, the court must regard as true the opposing party's evidence, if it is supported by affidavits or other evidentiary material.  Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289.  The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case.  The substantive law will identify which facts are material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of production by either of two methods:

> The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial.

Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc., 210 F.3d 1099, 1106 (9th Cir. 2000).

If the moving party discharges its burden by showing an absence of evidence to support an essential element of a claim or defense, it is not required to produce evidence showing the absence of a material fact on such issues, or to support its motion with

United States District Court
For the Northern District of California

evidence negating the non-moving party's claim.  Id.; see also
Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 885 (1990); Bhan v.
NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991).  If the
moving party shows an absence of evidence to support the non-moving
party's case, the burden then shifts to the non-moving party to
produce "specific evidence, through affidavits or admissible
discovery material, to show that the dispute exists."  Bhan, 929
F.2d at 1409.

DISCUSSION

I.   Section 1983 Claims

     A.   Standard for Liability

     Section 1983 "provides a cause of action for the 'deprivation
of any rights, privileges, or immunities secured by the
Constitution and laws of the United States.'"  Wilder v. Va. Hosp.
Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983).
Section 1983 is not itself a source of substantive rights, but
merely provides a method for vindicating federal rights elsewhere
conferred.  See Graham v. Connor, 490 U.S. 386, 393-94 (1989).  To
state a claim under section 1983, a plaintiff must allege two
essential elements: (1) that a right secured by the Constitution or
laws of the United States was violated; and (2) that the alleged
violation was committed by a person acting under color of state
law.  West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda
County, 811 F.2d 1243, 1245 (9th Cir. 1987).

     The Fourteenth Amendment provides, "No State shall . . .
deprive any person of life, liberty, or property, without due
process of law."  The Supreme Court has established that the due
process clause imposes a duty upon the State to provide for the

7

safety and general well-being of a person whom it has taken into custody and held against his or her will.  DeShaney v. Winnebago County Dept. of Soc. Serv., 489 U.S. 189, 200 (1989).  "When the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his . . . reasonable safety . . . it transgresses the substantive limits on state action set out by . . . the Due Process Clause."  Id.  Thus, Plaintiff had a Fourteenth Amendment right to be held at JGPP in reasonably safe conditions.  She asserts that Defendants' failure to provide adequate security, which led to Frowner's assault on her, constitutes a deprivation of her substantive due process rights.

In Youngberg v. Romeo, 457 U.S. 307 (1982), the Supreme Court addressed the standard that governs substantive due process claims by involuntarily committed individuals.  The Court recognized that a patient's liberty interest is not absolute, but must be balanced by the need of the state to promote therapeutic goals and the safety of other patients.  Id. at 319-20.  Recognizing the need to "show deference to the judgment exercised by a qualified professional," the Court held that liability may be imposed only when the decision resulting in the restraint on the plaintiff's liberty "is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment."  Id. at 322-23.

It is not clear how Youngberg's "departure from professional judgment" standard applies to the present case, in that Youngberg,

United States District Court
For the Northern District of California

like the other comparable cases cited by the parties, involved the constitutionality of specific treatment decisions that resulted, directly or indirectly, in interference with the plaintiff's liberty.  Here, in contrast, Plaintiff's has not pointed to a decision of any kind regarding her or Frowner's treatment.  She does not, for example, point to a decision based on professional judgment concerning the appropriate level of restraint for Frowner. Nor has she pointed to any professional judgment concerning the methods that are employed at ACMC to ensure that one patient is not able to intrude into the room of another.  Rather, her claim is based on ACMC staff's apparently inadvertent failure to ensure that the lock to her door was functioning properly and that Frowner was secured in his own room.

Although the parties have not cited any case directly applicable to the facts here, the Ninth Circuit's decision in Estate of Conners v. O'Connor, 846 F.2d 1205 (9th Cir. 1988), provides some guidance as to the appropriate standard.  The decedent in Estate of Conners was a patient at a state hospital. She was killed by another patient who, "despite his demonstrated homicidal propensities," was "permitted to roam the grounds of the hospital under official and de facto policies then in effect."  Id. at 1206-07.  The Ninth Circuit explained the application of the Youngberg standard:

> Under Youngberg's balancing test, the risk of harm and the burden on the state are weighed in examining discretionary management choices for reasonableness. Liability may be imposed on a professional state officer only when his or her decision is so objectively unreasonable as to demonstrate that he or she actually did not base the challenged decision upon professional judgment.  We believe that this standard is equivalent to that required in ordinary tort cases for a finding of

United States District Court
For the Northern District of California

conscious indifference amounting to gross negligence. Certainly, the <u>Youngberg</u> standard is far more stringent than that required for a finding of negligence, which may be demonstrated by a professional's mere failure to exercise the level of care expected of other professionals in the same field.

<u>Id.</u> at 1208. Although <u>Estate of Conners</u> involved a decision concerning procedures for assessing the risk to non-violent patients posed by violent ones, <u>id.</u> at 1208-09, the court's equation of <u>Youngberg</u>'s standard with "conscious indifference amounting to gross negligence" indicates that Defendants here can be held liable for constitutional violations if they were conscious of the risk that Frowner posed to other patients and of the fact that Plaintiff's room was not secure, but failed to exercise their professional judgment to take appropriate action in response. <u>Estate of Conners</u> also makes it clear that Plaintiff may not succeed on her constitutional claims merely by showing negligence on the part of Defendants.

B.    Claims Against the Individual Defendants

To prevail on a constitutional claim against any particular individual Defendant, Plaintiff must come forward with some evidence linking her injury to that Defendant's conscious indifference to the safety threat posed by Frowner and the defective lock on her door. Not only has Plaintiff failed to come forward with such evidence, she has not come forward with evidence of <u>any conduct</u> on the part of the individual Defendants. She offers only the fact that she complained to an unidentified person that Frowner was leering at her, that Frowner was able to gain entry to her room and that the door's latching mechanism was later determined to have malfunctioned. Although these facts may be

10

sufficient to show that someone was negligent, they are not sufficient to establish a constitutional claim against any of the individual Defendants.  Plaintiff's final attempt on July 20, 2009, to support her opposition to summary judgment once again provided no evidence of action on the part of any individual Defendant, nor did it point to any specific information that could be gathered through continued discovery to preclude summary judgment.  Because Plaintiff has not carried her burden of production, the Court grants summary judgment in favor of the individual Defendants on the section 1983 claims against them.

C.   Claim Against ACMC

Counties and municipalities cannot be held vicariously liable under section 1983 for the actions of their employees.  Monell v. N.Y. City Dep't of Soc. Servs., 436 U.S. 658, 692 (1978).  "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under 1983."  Id. at 694.

Plaintiff claims that ACMC, an agency of the County of Alameda, showed deliberate indifference to her constitutional right to be reasonably protected and safe while under ACMC's exclusive and forced custody.  Plaintiff alleges that ACMC knew, or should have known, that Frowner had a violent history.  She also claims that there have been repeated incidents of assaults on staff and patients at ACMC and that ACMC has been repeatedly advised by state regulatory agencies that its security measures are inadequate and place the staff and patients at undue risk.  She also alleges in

11

conclusory terms that the training of ACMC's employees is inadequate.

Although Plaintiff's allegations, if proven, could potentially be sufficient to establish a constitutional claim against ACMC, she has not come forward with any admissible evidence in support of her assertions.  She points only to the report of the L&C investigation, which lists three violations of state regulations and documents the failure in the latching mechanism.  This is not evidence of a policy or custom.  In spite of being given several opportunities to show evidence of a policy or custom which caused Plaintiff's injury, Plaintiff has not been able to do so.  Without any evidence to support her constitutional claim against ACMC, Plaintiff cannot defeat summary judgment.  The Court therefore grants ACMC's motion for summary judgment on the section 1983 claim against it.

II.  Negligence Claims

Where a federal court has federal question jurisdiction over a matter, as the Court originally did here when the case was removed from state court, the district court may exercise "supplemental" jurisdiction over state law claims that are transactionally related to the federal claim.  28 U.S.C. § 1367.  However, the district court may decline to exercise supplemental jurisdiction over a claim if the court has dismissed all claims over which it had original jurisdiction.  28 U.S.C. § 1367(c).  Additionally, "economy, convenience, fairness and comity" should be considered in an analysis of supplemental jurisdiction.  Executive Software v. United States District Court, 24 F.3d 1545, 1556-57 (9th Cir. 1994).

12

**United States District Court**
For the Northern District of California

1    The Court has had minimal involvement in this case.   In

2  addition, the state law claims present an issue of law on which

3  California courts of appeal have disagreed.   Compare Baber v. Napa

4  State Hosp., 209 Cal. App. 3d 213 (1989), with Lockhart v. County

5  of Los Angeles, 155 Cal. App. 4th 289 (2007).   Moreover, Defendants

6  have conditionally agreed to reasonable discovery in state court.

7  See Ex. 4 to Pl.'s Supp. Authorities (Docket No. 69).

8    The Court concludes that it would be preferable to remand this

9  action to state court for further proceedings, and thus declines to

10  exercise supplemental jurisdiction over Plaintiff's negligence

11  claims.

12                              CONCLUSION

13    For the foregoing reasons, the Court GRANTS IN PART and DENIES

14  IN PART Defendants' motion for summary judgment.   Summary judgment

15  is granted in favor of Defendants on Plaintiff's constitutional

16  claims against them, and is denied on her negligence claims against

17  them.   The clerk shall remand the case to the Alameda County

18  Superior Court.

19    IT IS SO ORDERED.

20

21  Dated: 8/17/09

22                              _____
                                CLAUDIA WILKEN
23                              United States District Judge

24

25

26

27

28